[Civ. No. 31682.   Second Dist., Div. Four.   Nov. 30, 1967.]

BESS GILL et al., Plaintiffs and Appellants, v. SURGITOOL INCORPORATED, Defendant and Respondent.

Edgar Simon for Plaintiffs and Appellants.

Gibson, Dunn & Crutcher and John H. Sharer for Defendant and Respondent.

BISHOP, J. pro tem.*—This is an appeal by the plaintiffs from two successive orders granting the motion of defendant Surgitool, Incorporated, a Pennsylvania corporation, to quash service of summons and complaint upon it. The ground of defendant's motion was that it "is a foreign corporation not doing business within the State of California and therefore is not subject to the process of the Superior Court of this State." In support of its position it tendered the affidavit of its president, while in opposition plaintiffs presented the declaration of Phil Nelson, an employee in the supply department of the Los Angeles County General Hospital. After weighing the facts thus presented in these two documents, the trial court granted the motion to quash, and followed its order so doing with another written order to the same effect. We have concluded that the orders should be affirmed.

A brief word about the nature of the action will help us evaluate the situation. Plaintiffs sued for $350,000 damages as the heirs of one Benny Gill on the theory that his death had been caused by the failure of a "certain number 3 Magovern Aortic Valve," which was used to replace his own aortic valve as a step in a surgical operation. The operation, performed in St. Vincent's Hospital in the County of Los Angeles, February 2, 1965, was thought to be successful, and he was discharged from the hospital. But on or about April 4, 1966, "suddenly, the said Benny Gill, deceased, suffered a myocardial infarction as a proximate result of defects in the malfunctioning of the Magovern Aortic Valve, . . . said Benny Gill died on April 4, 1966, at Panorama City, California." Our quotations have been from the unverified complaint, which names as defendants in addition to Surgitool, Incorporated, another corporation and lists a number of corporations and individuals fictitiously named, blaming each for everything.

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

Obviously, we are not on this appeal so much concerned with the question "does the complaint state a cause of action against defendant Surgitool, Incorporated?" as we are with ascertaining if the service of process on that defendant was that authorized by subdivision 2 of section 411, Code of Civil Procedure, which provides: "The summons must be served by delivering a copy thereof as follows: . . . 2. If the suit is against a foreign corporation . . . doing business in this State; in the manner provided by Sections 6500 to 6504, inclusive, of the Corporations Code."

Our critical question narrows, then, so that we now inquire: Did it appear that our defendant, which was a foreign corporation, was one "doing business in this state?" In endeavoring to lay a foundation for the answer to that question we run again and again into such statements as this, taken from *Henry R. Jahn & Son, Inc.* v. *Superior Court* (1958) 49 Cal.2d 855, 858 [323 P.2d 437, 439]: "The statute authorizes service of process on foreign corporations that are 'doing business in this State.' That term is a descriptive one that the courts have equated with such minimum contacts with the state 'that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." ' " The question that confronts us, so set up, has been debated in our appellate courts again and again, but it remains, obviously, one that depends for its answer in each case upon the circumstances of that case. We shall select, for our guidance, two cases, in each of which the problem was sufficiently difficult that the trial court and the appellate court reached opposite results. Then we shall examine the pertinent facts of this case, in light of the two cases.

A police officer was the plaintiff in *Cosper* v. *Smith & Wesson Arms Co.* (1959) 53 Cal.2d 77 [346 P.2d 409]. He had purchased in this state a revolver manufactured by the Massachusetts corporation which he named a defendant. During target practice the revolver "exploded and blew apart" injuring him. The trial court held that service upon the corporation was not authorized as it had not been shown that it had been doing business within the state.

The Supreme Court reversed the trial court's order quashing service, stating (53 Cal.2d 82 [346 P.2d 413]): "From the record it indisputably appears that Smith and Wesson had a continuing arrangement for the distribution and sale of its products throughout this state. Said defendant had retained a manufacturer's representative, Lookabaugh, for

the promotion of sales, for the servicing of dealer accounts, and for the distribution of advertising material which defendant furnished in furtherance of its selling activity. Such a regular course of business dealings in sales promotion within the state is similar to the regular purchasing activities of the foreign corporation in the Jahn case and the regular selling activities of the foreign corporation in the Borgward case. Though self-employed as a manufacturer's representative, Lookabaugh was performing much the same type of substantial selling services for Smith and Wesson through a course of regularly-established and systematic business activity as were deemed in *Gray* v. *Montgomery Ward, Inc.*, 155 Cal.App.2d 55 [317 P.2d 114], to constitute 'doing business' in the state by the foreign corporation there involved. These services may reasonably be said to have given Smith and Wesson 'in a practical sense, and to a substantial degree, the benefits and advantages it would have enjoyed by operating through its own office or paid sales force.' (*Sales Affiliates, Inc.* v. *Superior Court*, 96 Cal.App.2d 134, 136 [214 P.2d 541].)''

The second case to which we shall look is *Yeck Mfg. Corp.* v. *Superior Court of San Diego County* (1962) 202 Cal.App. 2d 645 [21 Cal.Rptr. 51]. Here, we have not an appeal. but a petition for a writ of mandate to compel the superior court to reverse itself and quash service of summons upon the petitioner, a Michigan corporation. An action had been brought by one Rowell to recover damages due to the failure of some columns to hold up a patio roof. Service of summons upon the petitioner, one of the defendants, was made ''on the contention that petitioner was 'doing business in the State' within the meaning of Code of Civil Procedure, section 411, subdivision 2. The motion to quash service was heard in the Superior Court on affidavits, was denied and petition herein filed.''

We shall quote further passages from the opinion. the first being from page 647 of 202 Cal.App.2d [page 52 of Cal. Rptr.] :

## "FACTS

''The essential facts disclosed by the record before us are without conflict. Petitioner is a Michigan Corporation with its sole manufacturing plant and sole place of physical business operation at Dundee, Michigan. It manufactures certain aluminum building materials. Its general circulatory advertising is solely in national trade magazines. It makes no personal mail or telephone solicitation of sales in California. It has no

offices, agents, solicitors, sales contracts, agreements, or franchise arrangements of any kind in this state, and has never listed itself with any California governmental agency. Its sole method of sale is by acceptance of orders through the United States mail for a specified price and shipment by truck or railroad to the buyer. There is no evidence of any retention of title, sale or consignment, payment of commission, or price control. Its California sales are casual and isolated.''

Later we read (202 Cal.App.2d 653 [21 Cal.Rptr. 56]: ''Examining the facts in the case at bar reveals that there is no evidence that the contract of sale was made in California nor that petitioner had any agent, office, sales representative, retention of title, commission agreement, exclusive agency or exclusive sales outlet in California. The record reveals nothing as to the extent of petitioner's deliveries in California or who, if any other persons, purchased their goods. The sole brochure relied on by Rowell does not contain the name of the petitioner nor the petitioner's address. It does not mention the article complained of by Rowell. On its face it is the brochure of Reynolds. Stripped of legal conclusions the factual evidence shows nothing but a sale in Michigan to a California wholesaler . . . making his own independent sales in this State of his own property to a retailer who in turn sold to Rowell. While not decisive of the issue, the total lack of privity between Rowell and petitioner is also worthy of note.''

In between these quotations are reviews of many cases, including these where foreign corporations were held not subject to service of summons: *Martin Bros. Elec. Co.* v. *Superior Court* (1953) 121 Cal.App.2d 790 [264 P.2d 183]; *Estwing Mfg. Co.* v. *Superior Court* (1954) 128 Cal.App.2d 259 [275 P.2d 146]; and *Proctor & Schwartz, Inc.* v. *Superior Court* (1950) 99 Cal.App.2d 376 [221 P.2d 972].

The *Yeck Mfg. Corp.* v. *Superior Court* opinion contains two quotations that will serve as an introduction to our statement of the facts in this case. The first is a sentence from *Cosper* v. *Smith & Wesson Arms Co., supra,* 53 Cal.2d at p. 83 [346 P.2d at p. 413]: ''Whether in any given case, the person served may properly be regarded as within the concept of the statute depends on the particular facts involved.'' The second was the sentence preceding the one just quoted: ''When the validity of the service of summons and complaint on a foreign corporation under the substitute service provisions of said section 6501 is challenged, the burden of proving that

such corporation is 'doing business in this State' is on the plaintiff. (*Proctor & Schwartz, Inc.* v. *Superior Court, supra,* 99 Cal.App.2d at p. 379 [221 P.2d 972] and authorities there cited.'' To the same effect are *Confidential, Inc.* v. *Superior Court* (1958) 157 Cal.App.2d 75, 79 [320 P.2d 546, 549] and the many cases cited.

■ We confidently submit that the *facts* in this case, as they were made to appear before the trial court, warranted it in making the two orders which the appeal has brought before us. As already noted, the defendant corporation relied upon the affidavit of its president, who asserted that the defendant ''is in the business, among other things, of manufacturing and selling the Magovern-Cromie Sutureless Aortic Heart Valve.'' Then appears this: ''7. The sale of the Magovern-Cromie Sutureless Aortic Heart Valve, which is the apparent subject of the present lawsuit, was made in Pittsburgh, Pennsylvania, where Surgitool received a purchase order and in response to such purchase order shipped the ordered valve.'' It should not escape our attention that the identity of the person who sent the purchase order is not given nor the address to which the valve was sent.

Nor are we advised of these facts, as touching on the valve that was said to have caused Benny Gill's death, in the declaration of Phil Nelson offered by plaintiffs in opposition to defendant's motion. Nelson was an employee of Los Angeles County, with ''a responsibility for ordering medical and hospital supplies and equipment.'' This has been done ''both by correspondence and by telephone'' with the defendant from whom ''we have received from time to time various brochures and publications consisting of catalogs, price lists, maintenance suggestion letters and offerings. . . . I have personally talked with the company at least one time that I can recall with reference to the purchase of a heart valve; we have also at the request of one or more of our doctors who use these valves in surgery, corresponded with Surgitool, Inc. and negotiated with the company for the modification of valves and return to us the modified valves from Pittsburgh.''

It will be noted that nowhere does it appear that the Pennsylvania corporation took the initiative in doing any business in California and it had no agent busy here. Beyond doubt, the facts found to furnish a basis for holding that the foreign corporation had done business in California, in *Cosper* v. *Smith & Wesson Arms Co.*, just do not appear in this case. As tested by the many cases reviewed by the two cases cited,

*Cosper* v. *Smith & Wesson Arms Co.* and *Yeck Mfg. Corp.* v. *Superior Court,* the cases reviewed by those cases but not reviewed by us in this opinion, the orders of the trial court in this case were correct and should be, and are, affirmed.

Files, P. J., and Jefferson, J., concurred.