[L. A. No. 29634.   In Bank.   Aug. 28, 1969.]

BUCKEYE BOILER COMPANY, Petitioner, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent; WAYMAN P. FLYNT, Real Party in Interest.

894

Murchison, Cumming, Baker & Velpmen and Ronald R. McQuoid for Petitioner.

No appearance for Respondent.

Margolis & McTernan, John T. McTernan, James L. Larson and Ben Margolis for Real Party in Interest.

PETERS, J.—Petitioner The Buckeye Boiler Company seeks a writ of mandate to compel the respondent superior

court to quash the service of summons upon it in àn action fo
personal injuries brought by real party in interest Wayma
P. Flynt. Involved is the scope of jurisdiction of Californi
courts over foreign corporations claimed to be ''doing bus
ness in this state.'' (Code Civ. Proc., § 411, subd. 2.)

The record shows that on or about March 15, 1967, whi
acting in the course of his employment at the General Electr
Company's plant in Ontario, California, plaintiff was injure
by the explosion of a pressure tank containing an unidentifie
liquid and being used in connection with a system for th
spraying of liquid under air pressure. The tank, it is allege(
bore a metal nameplate with the legend: ''The Buckey
Boiler Company, Dayton, Ohio. Built 1960—150 lbs, max
mum;'' and was, according to the record, being put to a us
for which it was intended when manufactured. While receiv
ing treatment in a California hospital for his injuries result
ing from the explosion, plaintiff it is claimed suffered a fal
after which he was stricken with left hemiplegia, that is, tota
paralysis of his entire left side.

Plaintiff sued Buckeye, alleging inter alia negligent manu
facture of the pressure vessel, manufacturer's strict liability
and breach of warranty. By amended complaint, plaintif
joined as defendants the doctor by whom and the hospital in
which he was treated for his injuries [hereinafter ''medical
defendants''], alleging that the fall he suffered resulted from
their negligence, and further alleging that he is in doub
whether his hemiplegic condition resulted from the explosion
the negligence of the doctor and hospital, or both.

Service of process upon Buckeye was effected by personal
delivery to the Secretary of State, pursuant to section 411,
subdivision 2, of the Code of Civil Procedure. Buckeye ap-
peared specially (Code Civ. Proc., § 416.3) and moved to
quash the service of summons on the ground that it was not
doing business in the State of California and therefore could
not properly be served with process pursuant to section 411,
subdivision 2. The motion was denied.[1]

The medical defendants consist of a California corporation
and an individual who is a California resident, both of whom
allegedly cannot be sued in any other state on plaintiff's

---

[1]Buckeye's motion was originally granted without prejudice to a fur-
ther application for substituted service by plaintiff supported by a show-
ing of further jurisdictional facts. Substituted service was effected a
second time and a second motion to quash service, opposed by affidavits
setting forth the jurisdictionally relevant facts enumerated in this
opinion, was denied.

sserted causes of action. All witnesses of the accident reside in California.

Buckeye is a foreign corporation, organized and existing under the laws of the State of Ohio, with its principal place of business and principal offices in Dayton, Ohio. It manufactures pressure vessels which have numerous and varied uses. Sales are solicited outside Ohio in interstate commerce both directly and through independent manufacturers' representatives who sell Buckeye's products on a commission basis in Ohio, Kentucky, Michigan, Indiana, Pennsylvania, New Jersey, New York, Connecticut, Maryland, Delaware, North Carolina, South Carolina, West Virginia, Virginia, Georgia, Florida, and Alabama. Buckeye does not advertise its products.

Buckeye has no agent, office, sales representative, exclusive agency or exclusive sales outlet, warehouse, stock of merchandise, property, or bank account in California. It does not sell on consignment to, and has no commission agreement with, any person or entity in California. However, for a period of five years prior to plaintiff's injury, and continuing to the present, Buckeye has sold pressure tanks to Cochin Manufacturing Company, an Ohio corporation, which maintains a manufacturing plant in South San Francisco, California. Cochin orders some tanks directly from that plant; the purchases of other tanks are negotiated through its Ohio office. Buckeye ships the tanks (priced at $55 to $60 each) directly to the Cochin plant in South San Francisco. Annual gross sales to Cochin during the last two or three years have ranged from $25,000 to $35,000. Cochin manufactures hydraulic automobile lifts for service stations; it incorporates the tanks purchased from Buckeye into these lifts and then sells the lifts to purchasers throughout California and in other states. Cochin apparently does not resell Buckeye's tanks for other uses.

Buckeye claims that other than sales to Cochin it has had "no contact with anyone in the State of California" and that it has not sold any of its products to the General Electric Company between January 1960 and the present. However, Buckeye admits that it has no records of its sales prior to 1962.

Buckeye ships to the Cochin plant in South San Francisco tanks identified in its invoices as "Hydraulic Oil Tanks" which are generally 14 inches in diameter and 75 inches in height. Apparently the exploding tank which allegedly injured plaintiff was approximately 10 inches in diameter and

16 inches in height. There is no evidence in the record befor us, other than the evidence of size and general type of use, t indicate what significant differences there may be between th tanks purchased by Cochin and the tank which allegedl injured plaintiff.[2]

Plaintiff is unable to establish where his employer pur chased the exploding tank. The chief of the purchasin department at General Electric's Ontario, California, plan testified that the company has no record of purchasing th tank in question, or any other item, from Buckeye. He als testified that the department destroys records more than fiv years old. However, he stated that it was the department' policy to purchase equipment, whenever possible, from sup pliers located within the State of California.

Section 411, subdivision 2, of the Code of Civil Proce dure authorizes service of process on foreign corporations "do ing business in this state." This section exerts the full powe of the state, consistent with the due process clause, to subjec foreign corporations to the jurisdiction of California courts. (*Fisher Governor Co.* v. *Superior Court,* 53 Cal.2d 222, 224 [1 Cal.Rptr. 1, 347 P.2d 1].) Thus, in a case such as the present one where a foreign corporation contends that servic of process upon it is not authorized by section 411, we must determine "whether jurisdiction may constitutionally be as sumed." (*Id.,* at p. 225.)

A defendant not literally "present" in the forum state may not be required to defend itself in that state's tribunals unless the "quality and nature of the defendant's activity" in relation to the particular cause of action makes it fair to do so. (*Hanson* v. *Denckla,* 357 U.S. 235, 253 [2 L.Ed.2d 1283, 1297, 78 S.Ct. 1228]; *McGee* v. *International Life Ins. Co.,* 355 U.S. 220 [2 L.Ed.2d 223, 78 S.Ct. 199]; *Henry R. Jahn & Son, Inc.* v. *Superior Court,* 49 Cal.2d 855, 860 [323 P.2d 437].) Such a defendant's activity must consist of "an act done or transaction consummated in the forum State" or "some [other] act by which the defendant pur posefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protec tions of its laws." (*Hanson* v. *Denckla, supra,* at pp. 251, 253 [2 L.Ed.2d at pp. 1296, 1297].) Furthermore, unless the defendant's forum-related activity reaches such extensive

---

[2]In a brief filed with this court Buckeye for the first time claims that the tanks purchased by Cochin bear "no relation" to the tank that injured plaintiff.

r wide-ranging proportions as to make the defendant suffiiently ''present'' in the forum state to support jurisdiction ver it concerning causes of action which are unrelated to that ctivity (*Fisher Governor Co.* v. *Superior Court, supra,* 53 Cal.2d 222, 225, and authorities cited therein), the particular ause of action must arise out of or be connected with the defendant's forum-related activity. (*McGee* v. *International Life Ins. Co., supra,* 355 U.S. 220, 223 [2 L.Ed.2d 223, 226]; *International Shoe Co.* v. *Washington,* 326 U.S. 310, 319 [90 L.Ed. 95, 103, 66 S.Ct. 154, 161 A.L.R. 1057].)

Once it is established that the defendant has engaged in ctivity of the requisite quality and nature in the forum state and that the cause of action is sufficiently connected with this ctivity, the propriety of an assumption of jurisdiction depends upon a balancing of the inconvenience to the defendant n having to defend itself in the forum state against both the interest of the plaintiff in suing locally and the interrelated interest of the state in assuming jurisdiction. (*McGee* v. *International Life Ins. Co., supra,* 355 U.S. 220, 223 [2 L.Ed. 2d 223, 226]; *Fisher Governor Co.* v. *Superior Court, supra,* 53 Cal.2d 222, 225-226.) █ In other words, once the threshold of sufficient activity by the defendant has been passed, the question of the propriety of subjecting the defendant to the jurisdiction of the forum involves both a consideration of fairness to the plaintiff (see *Phillips* v. *Anchor Hocking Glass Corp.* (1966) 100 Ariz. 251 [413 P.2d 732, 19 A.L.R.3d 1, 7]) and a determination of whether, from a standpoint of the logical and orderly distribution of interstate litigation, the forum state is what Professor Ehrenzweig has termed a ''forum conveniens.'' (See Ehrenzweig, *The Transient Rule of Personal Jurisdiction: The "Power" Myth and Forum Conveniens* (1956) 65 Yale L.J. 289, 312; see generally, von Mehren and Trautman, *Jurisdiction to Adjudicate: A Suggested Analysis* (1966) 79 Harv.L.Rev. 1121.)

The forum state, of course, has an interest in opening its courts to residents seeking redress (*Fisher Governor Co.* v. *Superior Court, supra,* 53 Cal.2d 222, 225), particularly when its courts are the only ones accessible to them as a practical matter. It also has an interest, from the standpoint of the orderly administration of the laws, in assuming jurisdiction in cases where most of the evidence, testimonial and otherwise, is within its borders and where prevailing choice of law principles dictate the application of local law to the major issues involved. (*Fisher Governor Co.* v. *Superior Court,*

*supra*, 53 Cal.2d 222, 225; *Gray* v. *American Radiator (Standard Sanitary Corp.*, 22 Ill.2d 432 [176 N.E.2d 761, 766].)

The plaintiff, of course, has an interest in presenting hi claim in court and in obtaining relief if it is warranted. A already indicated, suit in a local court may be his only practi cal opportunity to accomplish this objective. Both the plaintif and the state may have an interest in avoiding multiple an possibly conflicting adjudications. (Compare *Empire Stee Corp.* v. *Superior Court*, 56 Cal.2d 823, 833 [17 Cal.Rptr. 150 366 P.2d 502], with *Henry R. Jahn & Son, Inc.* v. *Superio Court, supra*, 49 Cal.2d 855, 862.) On the other hand, a non resident defendant which derives economic benefit from activ ity in the forum state and thus does more than a purely loca business ordinarily has very little basis for complaining o inconvenience when required to defend itself in that state (*McGee* v. *International Life Ins. Co., supra*, 355 U.S. 220 223-224 [2 L.Ed.2d 223, 226]; *Fisher Governor Co.* v. *Supe rior Court, supra*, 53 Cal.2d 222, 225-226; see von Mehren an Trautman, *supra*, 79 Harv.L.Rev. 1121, 1167-1168, 1172-1173.

The present case calls for an application of these principle to the field of products liability (see generally, Annotation Products Liability: In Personam Jurisdiction Over Nonresi dent Manufacturer or Seller Under "Long-Arm" Statutes 19 A.L.R.3d 13; Comment, *In Personam Jurisdiction Ove Nonresident Manufacturers in Product Liability Action* (1965) 63 Mich.L.Rev. 1028), a field in which the Unite States Supreme Court has not yet provided explicit guid ance.[3]

Courts and commentators have expressed differing views o whether the statement in *Hanson* v. *Denckla, supra*, 357 U.S 235, 253 [2 L.Ed.2d 1283, 1297], that jurisdiction over an absent nonresident defendant can only be predicated upon activity which the defendant "purposefully" conducts within the forum state, applies in all cases, including prod ucts liability actions against nonresident manufacturers, or is

---

[3]So far, decisions of the United States Supreme Court delineating the due process limitations on in personam jurisdiction over corporations have dealt with liability for payments to a state compensation fund (*International Shoe Co.* v. *Washington, supra*, 326 U.S. 310), liability to a stockholder for dividends and for failure to issue stock certificates *Perkins* v. *Benguet Min. Co.*, 342 U.S. 437 [96 L.Ed. 485, 72 S.Ct. 413]), liability to the beneficiary under an insurance contract (*McGee* v. *International Life Ins. Co., supra*, 355 U.S. 220), and liability of a trustee to residuary beneficiaries of a will (*Hanson* v. *Denckla, supra*, 357 U.S. 235).

mited to cases factually similar to *Hanson*.[4] (Compare Leflar, *Conflict of Laws* (1959) 34 N.Y.U.L.Rev. 20, 33; Thode, *In Personam Jurisdiction; Article 2031B, the Texas "Long Arm" Jurisdiction Statute; and the Appearance to Challenge Jurisdiction in Texas and Elsewhere* (1964) 42 Tex.L.Rev. 279, 301-310; with *Phillips* v. *Anchor Hocking Glass Corp., supra,* 19 A.L.R.3d 1, 7-8, 10; Comment, *Tortious Act as a Basis for Jurisdiction in Products Liability Cases* (1965) 33 Fordham L.Rev. 671, 685-686.) This court has apparently taken the former and sounder[5] position, that the *Hanson* formulation of the "minimum contacts" test (*International Shoe Co.* v. *Washington, supra,* 326 U.S. 310, 316 [90 L.Ed. 95, 102]) is generally applicable. (*Fisher Governor Co.* v. *Superior Court, supra,* 53 Cal.2d 222, 225-226; see also *Waco-Porter Corp.* v. *Superior Court,* 211 Cal.App.2d 559, 564-565 [27 Cal.Rptr. 371].) Thus, we must consider what the *Hanson* rule means in the products liability context.

In *Fisher Governor, supra,* we intimated that a nonresident manufacturer "purposefully" conducts activities within the forum state, within the meaning of *Hanson,* if it "knowingly inject[s] itself into a transaction . . . having substantial California contacts related to the causes of action." (53 Cal.2d at p. 226.) ▮ In *Empire Steel Corp.* v. *Superior Court, supra,* 56 Cal.2d 823, 834, we recognized that an enterprise "obtain[s] the benefits and protection of our laws" if, "as a matter of *commercial actuality,* [it] has engaged in economic activity within this state. . . ." (Italics added.) According to *Hanson,* the requirement that the defendant engage in purposeful activity within the forum state is designed to demonstrate that the defendant has invoked such benefits and

---

[4]In *Hanson,* a Pennsylvania domiciliary executed an *inter vivos* trust naming a Delaware trust company as trustee. She subsequently moved to Florida where she executed a will and exercised her power of appointment in the trust. After her death in Florida, beneficiaries under the will brought suit in Florida to have the trust declared invalid. The five-judge majority opinion held that Florida had no jurisdiction over the Delaware trustee, whose contacts with Florida primarily consisted of remitting trust income to the settlor in Florida and making changes in the instrument at the request of the settlor while she was in Florida.

[5]The court states in *Hanson*: "The unilateral activity of those who claim some relationship with a non-resident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but *it is essential in each case* that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State . . . ." (357 U.S. 235, 253 [2 L.Ed.2d 1283, 1297], italics added.)

protection and is *therefore* amenable to jurisdiction in at lea[
some cases. (357 U.S. 235, 253 [2 L.Ed.2d 1283, 1297].) Thu[
we have equated engaging in economic activity within th[
state "as a matter of commercial actuality" with *Hanson*[
requirement of purposeful activity within the state. (C[
*McGee* v. *International Life Ins. Co., supra,* 355 U.S. 220, 22[
223 [2 L.Ed.2d 223, 225-226].)

A manufacturer engages in economic activity within a sta[
as a matter of "commercial actuality" whenever the pu[
chase or use of its product within the state generates gro[
income for the manufacturer and is not so fortuitous o[
unforeseeable as to negative the existence of an intent on th[
manufacturer's part to bring about this result. (See, e.g[
*Gray* v. *American Radiator & Standard Sanitary Corp., supr*[
[176 N.E.2d 761, 766]; *Metal-Matic, Inc.* v. *District Court,* 8[
Nev. 263 [415 P.2d 617]; *DiMeo* v. *Minster Machine Co.,* 22[
F.Supp. 569 [mere presence of product in state not enough t[
sustain jurisdiction]; Comment, *supra,* 63 Mich.L.Rev. 102[
1033-1034; but see *Gill* v. *Surgitool Inc.,* 256 Cal.App.2d 58[
588 [64 Cal.Rptr. 207].)

A manufacturer's economic relationship with a state doe[
not necessarily differ in substance, nor should its amenabilit[
to jurisdiction necessarily differ, depending upon whether i[
deals directly or indirectly with residents of the state. "Wit[
the increasing specialization of commercial activity and th[
growing interdependence of business enterprises it is seldon[
that a manufacturer deals directly with consumers in othe[
States. The fact that the benefit he derives from [their] law[
is an indirect one, however, does not make [those laws] any th[
less essential to the conduct of his business; and it is no[
unreasonable, where a cause of action arises from allege[
defects in his product, to say that the use of such products i[
the ordinary course of commerce is sufficient contact wit[
[such states] to justify a requirement that he defend [there].'
(*Gray* v. *American Radiator & Standard Sanitary Corp.*
*supra* [176 N.E.2d 761, 766].)

A manufacturer whose products pass through the hands of
one or more middlemen before reaching their ultimate user[
cannot disclaim responsibility for the total distribution pat-
tern of the products. ■■■ If the manufacturer sells it[
products in circumstances such that it knows or should rea-
sonably anticipate that they will ultimately be resold in a
particular state, it should be held to have purposefully
availed itself of the market for its products in that state[

See, e.g., *Keckler* v. *Brookwood Country Club,* 248 F.Supp. 45, 647-649; *Bibie* v. *T. D. Publishing Corp.* (N.D. Cal. 1966) 252 F.Supp. 185.) In *Regie Nationale Des Usines Renault* v. *Superior Court,* 208 Cal.App.2d 702, 703 [25 Cal.Rptr. 30], the court refused to exempt the defendant, a French corporation, from jurisdiction in a suit apparently for personal injuries although the defendant did not sell its cars directly in California but rather "inaugurate[d] a flow of its products to . . . California" through a "Chain of sales" involving a wholly owned American subsidiary and independently owned distributorships and dealerships. The court held that the indirect manner in which the defendant dealt with California consumers "effect[s] little, if any, alteration in the jurisdictional situation." (Cf. *Empire Steel Corp.* v. *Superior Court, supra,* 56 Cal.2d 823, 829-831.)

The same focus on actual economic benefit should be made in cases where the middlemen between the defendant manufacturer and the consumer include intermediate manufacturers who incorporate the original manufacturer's products into their own as components thereof. (See *Gray* v. *American Radiator & Standard Sanitary Corp., supra* [176 N.E.2d 761, 766] [defendant manufactured safety valves in Ohio, sold them to a Pennsylvania manufacturer of water heaters which incorporated the valves into its heaters and sold the heaters in Illinois and other states]; see also *Stephenson* v. *Duiron Co.* (1965, Alaska) 401 P.2d 423, cert. denied 382 U.S. 956 [15 L.Ed.2d 360, 86 S.Ct. 431]; *Metal-Matic, Inc.* v. *District Court, supra,* 82 Nev. 263; *Golden Gate Hop Ranch, Inc.* v. *Velsicol Chemical Corp.,* 66 Wn.2d 469 [403 P.2d 351], cert. denied 382 U.S. 1025 [15 L.Ed.2d 539, 86 S.Ct. 644].)

A number of recent decisions of the California Courts of Appeal employ a mechanical "checklist" approach to determine the existence or nonexistence of purposeful activity within the state. (See *Gill* v. *Surgitool Inc., supra,* 256 Cal. App.2d 583; *DaSilveira* v. *Westphalia Separator Co.,* 248 Cal.App.2d 789 [57 Cal.Rptr. 62]; *Twinco Sales, Inc.* v. *Superior Court,* 230 Cal.App.2d 321 [40 Cal.Rptr. 833]; *Yeck Mfg. Corp.* v. *Superior Court,* 202 Cal.App.2d 645 [21 Cal. Rptr. 51] [does defendant have office, property, agent, employees, jobber, distributor, manufacturer's agent or other representative; is there solicitation or advertising; or was the sale made, *in California*].) This approach fails to focus on economic reality rather than the outward form of business transactions and is disapproved.

904

■ When a plaintiff is allegedly injured in the forum state by a defect in a nonresident manufacturer's product, the question whether that product's use or purchase was an isolated instance or part of a continuous course of business in the state is relevant but not necessarily decisive in determining the existence or nonexistence of the requisite jurisdictional activity. (*Empire Steel Corp.* v. *Superior Court, supra,* 56 Cal.2d 823, 832; accord, *Gray* v. *American Radiator & Standard Sanitary Corp., supra* [176 N.E.2d 761, 764].) Only if isolated use or purchase conclusively establishes lack of foreseeability that the product will enter the state is the isolation necessarily fatal to jurisdiction over the manufacturer; in that event there is a manifest lack of purposeful activity on the part of the manufacturer.

■ In the present case, it is clear that defendant derives substantial economic benefit from the sale and use of its products in California; it currently derives about $30,000 annually in gross sales revenues from its direct sales of certain pressure tanks to the Cochin Manufacturing Company plant in South San Francisco. On the basis of these sales alone, defendant is purposefully engaging in economic activity within California as a matter of "commercial actuality."

The trial court was warranted in concluding that defendant's total economic activity in California consists of its direct sales to Cochin and some indeterminate amount of additional sales activity, direct or indirect; and that at some time during or subsequent to 1960 (the date of manufacture of the tank that allegedly injured the plaintiff) and prior to 1962 (the year prior to which defendant has no sales records) defendant sold the pressure tank that allegedly injured plaintiff either directly to the General Electric plant in Ontario, California,[6] or through one or more intermediate parties. This tank may be the only Buckeye pressure tank ever sold in, or for use in, California other than the tanks sold to Cochin. Or it may be only one of a substantial number of pressure tanks purchased in, or for use in, California through the channels of interstate commerce in which defendant distributes many of its products. It is very possible that a number of the firms to which defendant sells its pressure tanks in the eastern half of the United States resell some of these tanks, either alone or as components of their own products, to customers in California. This distinct possibility is not negated by Buckeye's somewhat

[6]Defendant claims that it has not sold any of its products to General Electric between January 1960 and the present. However, defendant admits that it has no records of its pre-1962 sales.

vasive statement in its response to plaintiff's interrogatories that other than its sales to Cochin it has had "no contact with anyone in the State of California."

But whether the pressure tank that injured plaintiff is one of a number of tanks sent into California by Buckeye through a "chain of sales" (*Regie Nationale Des Usines Renault* v. *Superior Court, supra,* 208 Cal.App.2d 702, 703) or is the subject of an isolated California transaction apart from Buckeye's sales to Cochin, plaintiff's cause of action appears to arise from Buckeye's economic activity in California, the totality of its sales of pressure tanks to California customers or to other customers for foreseeable resale or use in California.

Buckeye did not allege before the trial court that the tank which allegedly injured plaintiff arrived in California in a manner so fortuitous and unforeseeable as to demonstrate that its placement here was not purposeful.[7] Nor did Buckeye there allege that the burden of defending the present action in California would be substantially different in its nature and extent than the burden of defending actions which might arise from sales of pressure tanks to Cochin.[8] If Buckeye can demonstrate both of these propositions,[9] an assumption of jurisdiction might well be inappropriate since it might then be said that plaintiff's cause of action neither arose from nor was connected with any purposeful activity by Buckeye within the State of California. Since Buckeye's position in

---

[7]The record shows only that this tank may be the only Buckeye tank in California other than tanks sold to Cochin and that it may not have been sold directly to General Electric Company (see fn. 6, *supra*).

[8]Buckeye has argued before this court for the first time that the pressure tank which allegedly injured plaintiff is significantly different from the tanks it sells to Cochin. No particulars have been specified.

[9]The plaintiff has the burden of showing that a defendant is doing business in California for purposes of section 411 of the Code of Civil Procedure. (*Agalite-Bronson Co.* v. *K. G. Limited,* 270 Cal.App.2d 308, 310 [75 Cal.Rptr. 527].) Consistent with this rule, it would seem that where, as in the present case, the plaintiff establishes that the defendant is a manufacturer which frequently does not deal directly with the ultimate purchasers or users of its products; that its products are put to "numerous and varied uses" which are not readily apparent to the average person; that a substantial amount of its business is conducted through the channels of interstate commerce; and that the defendant does engage in some substantial economic activity within the state, it is reasonable to require the defendant to carry the burden of making the sort of showing outlined above in order to avoid jurisdiction over a cause of action such as that involved in the present case. (Cf. *Keckler* v. *Brookwood Country Club, supra,* 248 F.Supp. 645, 647-649; *Gray* v. *American Radiator & Standard Sanitary Corp., supra* [176 N.E.2d 761, 764-766].)

the trial court was based in significant measure upon Court o
Appeal decisions that have been disapproved for applying th
purposeful activity test in too mechanical a fashion it shoul
be afforded the opportunity of making the sort of evidentiar
showing suggested above before the trial court, a showin
which appeared unnecessary under those decisions.

The interests of both the plaintiff and the State o
California appear to substantially outweigh any inconven
ience of which defendant may complain in being required t
defend the present action in California. The state has a sub
stantial interest in affording the plaintiff, a California resi
dent, a forum in which he may seek whatever redress i
warranted, especially where, as here, it is quite likely that th
plaintiff cannot, for financial as well as possible physical rea
sons, pursue his claim in the distant state where the defend
ant has its principal place of business. The plaintiff, in th
present case, also has a peculiar interest in litigating locally
The distinct preponderance of relevant evidence is locate
within California. Not only are all witnesses and records con
cerning explosion of the tank and the extent of plaintiff'
injuries here, but a major piece of evidence concerning th
question of defective manufacture—the tank itself—is als
here. Choice of law principles followed in California and Ohi
both appear to dictate the application of California law to th
major substantive issues likely to be involved. (Compar
*Reich* v. *Purcell,* 67 Cal.2d 551 [63 Cal.Rptr. 31, 432 P.2
727], with *Gallegos* v. *Union-Tribune Publishing Co.,* 195 Cal
App.2d 791, 797 [16 Cal.Rptr. 185] ; *Gordon* v. *Reynolds,* 18
Cal.App.2d 472, 477 [10 Cal.Rptr. 73] ; see *Collins* v
*McClure,* 143 Ohio St. 569 [56 N.E.2d 171, 172].) Finally
there may be a multiplicity of suits with possibly conflicting
results if plaintiff is forced to sue defendant Buckeye in Ohi
and the medical defendants in California. It will be recalle
that plaintiff alleged in his amended complaint that he is i
doubt whether his present incapacitating hemiplegic conditio
was caused by the explosion or by the negligence of the medi
cal defendants or both. He fears that if he is required to su
defendant Buckeye in Ohio and the medical defendants in
California, the defendant(s) in each case may be able to avoid
liability for this condition by pointing the finger at the absent
defendant(s).[10]

[10]In *Fisher Governor Co.* v. *Superior Court, supra,* 53 Cal.2d 222, 223,
this court noted that although the plaintiff alleged that jurisdiction over
the nonresident corporation was supported by the desirability of avoid-
ing multiplicity of litigation, there was no evidence in the record before

The plaintiff has made a sufficient prima facie showing that is injury arose from or is connected with purposeful activity n California—direct and indirect sales of pressure tanks— which produces economic benefit for Buckeye as a matter of commercial actuality." A balancing of inconvenience to the efendant against the interests of the state and the plaintiff n having the present litigation in California strongly favors ne local jurisdiction.

The alternative writ of mandamus is discharged and the pplication for a peremptory writ is denied.

Traynor, C. J., McComb, J., Tobriner, J., Mosk, J., Burke, ., and Sullivan, J., concurred.

---

he court to support the contention that the foreign corporation and the ther defendants, "various other corporations," could not be sued in ny one forum outside of California. The court concluded no danger of nultiple litigation had been shown. (*Id.*, at p. 226.) This case is different. The other defendants here are a California doctor and the San Antonio (California) Community Hospital, a California corporation. There appears to be no reasonable possibility that any of these California defendants could be sued in Ohio.