[Civ. No. 35013. First Dist., Div. One. July 15, 1975.]

BARTHOLOMEW BRANDEBURG, Plaintiff and Appellant, v.
NEW YORK TELEPHONE AND TELEGRAPH COMPANY,
Defendant and Respondent.

## COUNSEL

Gordon, Weltin, Holstein & Ropers and William J. Belli for Plaintiff and Appellant.

Pillsbury, Madison & Sutro, Noble K. Gregory, Harlan M. Richter and Michael H. Salinsky for Defendant and Respondent.

## OPINION

**ELKINGTON, J.**—In a California action brought by plaintiff Bartholomew Brandeburg against New York Telephone and Telegraph Company

(hereafter "New York Telephone"), a foreign corporation, for damages for personal injuries, the superior court granted New York Telephone's motion to quash service of summons. Plaintiff has appealed from the order granting the motion.

The basic issue of the appeal is whether California could constitutionally exercise jurisdiction over the action.

California's Code of Civil Procedure section 410.10 provides that: "A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States."

■ Such an exercise of jurisdiction by the state against a nonresident corporation is consistent with due process and other constitutional principles, when the corporation's activity consists of "an act done or transaction consummated in the forum State" or "some [other] act by which the [corporation] purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." (*Hanson* v. *Denckla,* 357 U.S. 235, 251, 253 [2 L.Ed.2d 1283, 1296, 1298, 78 S.Ct. 1228]; *Buckeye Boiler Co.* v. *Superior Court,* 71 Cal.2d 893, 898 [80 Cal.Rptr. 113, 458 P.2d 57].)

This rule was elaborated upon in *Internat. Shoe Co.* v. *Washington,* 326 U.S. 310, 319 [90 L.Ed. 95, 103-104, 66 S.Ct. 154, 161 A.L.R. 1057], as follows: "It is evident that the criteria by which we mark the boundary line between those activities which justify the subjection of a corporation to suit, and those which do not, cannot be simply mechanical or quantitative. The test is not merely, as has sometimes been suggested, whether the activity, which the corporation has seen fit to procure through its agents in another state, is a little more or a little less. [Citations.] Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure. That clause does not contemplate that a state may make binding a judgment *in personam* against an individual or corporate defendant with which the state has no contacts, ties, or relations. [Citations.] [¶] But to the extent that a corporation exercises the privilege of conducting activities within a state, it enjoys the benefits and protection of the laws of that state. The exercise of that privilege may give rise to obligations, and, so far as those obligations arise out of or are connected with the activities within the state, a procedure which requires the corporation to respond to a suit brought to enforce them can, in most instances, hardly be said to be undue."

The relevant facts being undisputed, the question before us is one of law. (*Cosper* v. *Smith & Wesson Arms Co.*, 53 Cal.2d 77, 81 [346 P.2d 409]; *Long* v. *Mishicot Modern Dairy, Inc.*, 252 Cal.App.2d 425, 427-428 [60 Cal.Rptr. 432].)

New York Telephone and Pacific Telephone and Telegraph Company (hereafter "Pacific Telephone") were cosubsidiaries of American Telephone and Telegraph Company. Plaintiff was a "plant employee" and "supervisor" of Pacific Telephone. He lived and was employed in California. Some or all of the plant employees of New York Telephone, engaged in a labor dispute with that company, were on strike. New York Telephone had entered into some sort of an agreement with Pacific Telephone under which the latter company agreed to lend some of its "plant supervisors" to New York Telephone for the purpose of performing the usual work duties of the striking employees. These plant supervisors were "sent" to New York, against the will of at least some of them.

A close relationship between the two companies had developed. Special payroll headquarters offices were established in the northern and southern regions of California for paying the salaries by Pacific Telephone of the loaned employees. The "reporting information [on the time worked was] called directly from New York to the regional coordinators" of Pacific Telephone. The rate of pay was that "in effect in the employee's home company," but the "overtime treatment for borrowed exempt employees [was] in accordance with New York Telephone working practices for management employees." New York Telephone ultimately paid the "bills for wages, salaries and other costs" which bills were eventually forwarded to it by the "lending company," Pacific Telephone. Each of the loaned employees drew "a $100 advance from his home company to cover his initial incidental expenses." He was required to "submit the appropriate expense vouchers to New York Telephone, thus replenishing the advance [and] Upon return to his home company, the employee shall return the advance."

"Groundrules of the loan" were prepared by agreement with New York Telephone. Copies of these ground rules were "provided to loaned supervisors before they [were] sent to New York." Among other things they provided the following. The expenses of travel were "billable to New York Telephone Company," but the "borrowed employees" should bring their own "protective eyeglasses and/or headgear." They would be reimbursed for "Public transportation/air coach accommodations"

traveling to or from New York, but "Parking fees for personal cars [were not to] be reimbursed." Daily meal expense would be paid by New York Telephone, not to exceed $15 per day unless given "division level approval." New York Telephone would arrange and pay for housing accommodations but the employees would "be responsible for room service costs." Some detailed incidental expenses would be reimbursed by one or the other of the companies while other expenses would not. But the loaned employees' "vouchers must include the keep cost order number applicable to the New York Company territory where the employee is assigned." The ground rules provided that "Only New York Telephone authorized holidays will be observed," and that "Borrowed employees may return to their homes every fourth weekend. New York Telephone will pay the round trip public transportation cost." "Any prescheduled vacation actually taken by the borrowed employee [would] be paid by the lending company" but "Travel time and expense to his home [would] be paid by New York Telephone."

Plaintiff Brandeburg was one of the Pacific Telephone supervisors who was loaned against his will to New York Telephone. While so employed he allegedly suffered injuries as a proximate result of the negligence of New York Telephone resulting in the instant personal injury action, and the quashing of the subject service of summons.

■ Beyond any doubt, New York Telephone's involved and consummated arrangements for recruitment in California, for employment in its New York operations, of large numbers of critically needed qualified persons, established that the company had important "contacts, ties, or relations" with, and "exercise[d] the privilege of conducting activities within," California (see *Internat. Shoe Co.* v. *Washington, supra,* 326 U.S. 310, 319 [90 L.Ed. 95, 103-104]). Further, such activities consisted of "act[s] done or transaction[s] consummated in the forum State" (see *Hanson* v. *Denckla, supra,* 357 U.S. 235, 251 [2 L.Ed.2d 1283, 1296]; *Buckeye Boiler Co.* v. *Superior Court, supra,* 71 Cal.2d 893, 898) which from any reasonable view were substantially in excess of the necessary "minimal contacts" with California, so that maintenance of the suit does not offend traditional notions of fair play and substantial justice. (See *Ault* v. *Dinner For Two, Inc.,* 27 Cal.App.3d 145, 151 [103 Cal.Rptr. 572], and see the authority there cited.)

It follows that the exercise of jurisdiction by the superior court over New York Telephone would be consistent with due process and other constitutional principles, and that the court's order quashing service of summons was erroneous.

The order granting New York Telephone and Telegraph Company's "motion to quash service of summons upon it" is reversed.

Sims, Acting P. J., and Lazarus, J.,* concurred.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.