387 So.2d 1009 (1980)
LIFE LABORATORIES, INC., Appellant,
v.
Cleopatra VALDES, Appellee.
No. 80-224.
District Court of Appeal of Florida, Third District.
September 9, 1980.
Corlett, Merritt, Killian & Sikes and Gerald E. Rosser, Miami, for appellant.
Charles F. Atwood, III, and Theresa E. Dalba, Miami, for appellee.
Before HENDRY, NESBITT and DANIEL S. PEARSON, JJ.
NESBITT, Judge.
By interlocutory appeal, appellant, defendant below (Life Laboratories), seeks reversal *1010 of an order denying its motion to dismiss appellee's (Valdes) amended complaint for lack of in personam jurisdiction.[1] We find error and reverse.
Valdes' amended complaint sought to impose liability against Life Laboratories and co-defendant, Plus Products Corporation (against which the amended complaint is pending in the trial court) on various product liability theories.
Valdes attempted to subject Life Laboratories to the long-arm jurisdiction of the Florida courts under Section 48.193(1)(f)2, Florida Statutes (1979).[2] In order to invoke a statutory right, a pleader must either allege ultimate facts to activate the statute or show how the statute applies. 25 Fla.Jur. Pleadings § 57. Valdes' amended complaint did not do either but instead merely tracked the qualifying language in Section 48.193(1)(f)2 and, standing alone, this is insufficient.
In her amended complaint, Valdes alleged that:
Defendant, LIFE LABORATORIES, INC. is the manufacturer of the product, PLUS FORMULA 730 PABA CREME, and Defendant offered the product for consumption by the public, and consumers generally, by manufacturing the product for PLUS PRODUCTS who sold the product to retail merchants, who then sold the product to consumers, such as Plaintiff, in Florida.
The amended complaint must be gauged by the foregoing allegation to determine whether Valdes pled sufficient ultimate jurisdictional facts to render Life Laboratories personally amenable to the jurisdiction of the Florida courts.[3]
The constitutionality of Section 48.193(1)(f)2, was sustained in Electro Engineering Products Co., Inc. v. Lewis, 352 So.2d 862 (Fla. 1977). In that case, the complaint alleged that the defective product was purchased, based on advertising campaigns conducted in Florida, through wholesale houses, mail order outlets, and other outlets utilized by the manufacturer for the sale of its product to the general public, by which it became available to users in this state.
It is now settled that in order to satisfy the jurisdictional nexus over a non-resident defendant by a long-arm statute and satisfy the minimum contact concept announced in International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) a plaintiff must show, as set forth in Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958),[4] that a *1011 non-resident defendant "purposefully avails" himself of the privilege of acting in the forum state. World-Wide Volkswagen Corporation v. Woodson, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); Horace v. American National Bank and Trust Company, 251 So.2d 33 (Fla. 4th DCA 1971).
In Aero Mechanical Electronic Craftsman v. Parent, 366 So.2d 1268 (Fla. 4th DCA 1979), that court articulated the test by which to activate Section 48.193(1)(f)2, as follows:
We ... interpret the phrase in the ordinary course of commerce to mean that the non-resident must at least have some reason to anticipate that his product will reach another state in the ordinary course of interstate commerce. The manufacturer could then be said to have acted in a purposeful manner or with such knowledge as to make its deeds the equivalent of having purposefully availed itself of the privilege of conducting activities within our state. [emphasis original]
366 So.2d at 1270. Although we agree with that test, we find it helpful to amplify and explain by quoting the California Supreme Court in Buckeye Boiler Co. v. Superior Court, 71 Cal.2d 893, 458 P.2d 57, 80 Cal. Rptr. 113 (1969):
A manufacturer engages in the economic activity within a state as a matter of `commercial actuality' whenever the purchase or use of its product within the state generates gross income for the manufacturer and is not so fortuitous or unforeseeable as to negative the existence of an intent on the manufacturer's part to bring about the result.
71 Cal.2d at 902, 458 P.2d at 64, 80 Cal. Rptr. at 120.
The "purposefully avails" test of Hanson v. Denckla, supra, was further explained in Buckeye Boiler Co. v. Superior Court, supra:
A manufacturer whose products pass through the hands of one or more middlemen before reaching their ultimate users cannot disclaim responsibility for the total distribution pattern of the products. If the manufacturer sells its products in circumstances such that it knows or should reasonably anticipate that they will ultimately be resold in a particular state, it should be held to have purposefully availed itself of the market for its products in that state.
71 Cal.2d at 902, 458 P.2d at 64, 80 Cal. Rptr. at 120.
Like our colleagues in Aero Mechanical Electronics Craftsman, supra, we find no allegations in the amended complaint disclosing that Life Laboratories knew or had any specific reason to anticipate that its products would be shipped in interstate commerce so that it would foreseeably injure a Florida user. There were no allegations that Florida was a target area or that Life Laboratories obtained substantial economic benefit from or sought to enter the Florida market. The complaint alleged that Life Laboratories manufactured the product for Plus Products. There are no allegations that Life Laboratories made marketing, advertising, or distribution decisions or that they controlled those determinations made by Plus Products. There were also no allegations that Life Laboratories distributed its products to Plus Products Corporation with the anticipation that the product would reach Florida.
In construing Section 48.193(1)(f)2, a nexus more substantial than a mere possibility that a product might reach this state must be pled and, if controverted, overcome. Harlo Products Corporation v. J.I. Case Company, 360 So.2d 1328 (Fla. 1st DCA 1978); Jack Pickard Dodge, Inc. v. Yarbrough, 352 So.2d 130 (Fla. 1st DCA 1977); Dunn v. Upjohn Company, 350 So.2d 127 (Fla. 1st DCA 1977); Dublin Company v. Peninsular Supply Company, supra; In-Flight Devices Corporation v. Van Dusen Air, Inc., 466 F.2d 220 (6th Cir.1972).
Accordingly, we reverse the interlocutory order appealed from and remand the cause with directions to dismiss the amended complaint, without prejudice, for lack of in personam jurisdiction.
Reversed and remanded.
NOTES
[1] We have jurisdiction pursuant to Fla.R. App.P. 9.130(a)(3)(C)(i).
[2] 48.193 Acts subjecting persons to jurisdiction of courts of state.

(1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits that person and, if he is a natural person, his personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following:
.....
(f) Causes injury to persons or property within this state arising out of an act or omission outside of this state by the defendant, provided that at the time of the injury either:
.....
(2) Products, materials, or things processed, serviced, or manufactured by the defendant anywhere were used or consumed within this state in the ordinary course of commerce, trade, or use, and the use or consumption resulted in the injury.
[3] In its motion to dismiss for lack of jurisdiction over the person, Life Laboratories incorporated a sworn affidavit controverting the material allegations of the complaint. We do not consider the affidavit here because we agree with Life Laboratories that Valdes did not satisfy her initial pleading burden so as to subject Life Laboratories to personal service. Dublin Company v. Peninsular Supply Company, 309 So.2d 207 (Fla. 4th DCA 1975).
[4] unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within in the forum State, thus invoking the benefits and protections of its laws.
357 U.S. at 253, 78 S.Ct. at 1239-40, 2 L.Ed.2d at 1298.