400 So.2d 157 (1981)
PENNINGTON GRAIN & SEED, INC., a Georgia Corporation, Appellant,
v.
MURROW BROTHERS SEED CO., INC., a Georgia Corporation, Appellee.
Nos. WW-468, WW-469.
District Court of Appeal of Florida, First District.
June 22, 1981.
*158 Russell W. LaPeer and George D. Gabel, Jr., of Wahl & Gabel, Jacksonville, for appellant.
Gerard & Matthews, Athens, Ga., and Ernest M. Page, Jr., Madison, for appellee.
THOMPSON, Judge.
In these cases, which have been consolidated on appeal, the appellant argues that the trial court erred by dismissing an amended third party complaint against the appellee, because the court did have jurisdiction over the appellee, pursuant to Florida's long arm statute. We agree and reverse.
In October 1978, the appellant ("Pennington") was sued in Florida by two Florida residents, who alleged that Pennington sold soybean seed to a Florida corporation, which in turn sold the seed to the plaintiffs. The plaintiffs alleged that the seed did not fully germinate as expressly and impliedly warranted by Pennington, and thus, there was a breach of warranty, as well as negligence and false labeling of the seed. Pennington filed a third party complaint against the appellee ("Murrow"), and Murrow filed motions to dismiss. Pennington filed affidavits in opposition to those motions and the trial court entered Orders in April and in May 1980, whereby the third party complaint was dismissed with leave to amend.
On May 27, 1980, Pennington filed an amended third party complaint against Murrow, alleging in part that: Pennington had purchased from Murrow certain soybean seed. This transaction took place in Georgia, and Pennington, which never handled the seed, was to advise Murrow where the seed was to be delivered. Subsequently, Pennington advised Murrow to deliver the soybean seed to a Madison, Florida corporation. Murrow made this delivery, using its own trucks, and it also placed Pennington's name on labels affixed to the bags of seed. The Florida corporation later sold the seed to two Florida residents, who in turn sued Pennington. Based partially on these allegations, Pennington contended that Murrow was subject to the jurisdiction of Florida's courts pursuant to § 48.193, Fla. Stat., and that Murrow should be held responsible for any amounts which may be recovered against Pennington by the Florida plaintiffs.
In June 1980, Murrow filed various affidavits along with a motion to dismiss the amended third party complaint. Murrow asserted in part that it had insufficient contacts with the State of Florida, and therefore, it was not subject to the jurisdiction of Florida's courts. After a hearing, the trial court entered its Order, dismissing the amended third party complaint without leave to amend.
The Florida Supreme Court, in Electro Engineering Products Co. v. Lewis, 352 So.2d 862, 864 (Fla. 1977), has noted that procedurally,
the plaintiff must initially allege in the complaint sufficient jurisdictional facts [to fall within the appropriate provisions of the long arm statute.] . .. The burden then shifts to the defendant to make a prima facie showing of the inapplicability of the Long Arm statute. At that time the plaintiff is required to substantiate the jurisdictional allegations in the complaint by affidavits or other competent proof, and not merely reiterate the factual allegations in the complaint.
*159 See also Guritz v. American Motivate, Inc., 386 So.2d 60, 62 (Fla. 2d DCA 1980). Thus, the initial inquiry is whether the allegations of the complaint are facially sufficient to support long arm jurisdiction pursuant to the actual language of § 48.193.
Pennington's only meaningful argument on appeal concerns the applicability of § 48.193(1)(f)2, which reads as follows:
48.193 Acts subjecting persons to jurisdiction of courts of state. 
(1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits that person and, if he is a natural person, his personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following:
... .
(f) Causes injury to persons or property within this state arising out of an act or omission outside of this state by the defendant, provided that at the time of the injury either:
... .
2. Products, materials, or things processed, serviced, or manufactured by the defendant anywhere were used or consumed within this state in the ordinary course of commerce, trade, or use, and the use or consumption resulted in the injury.
Pennington's allegations facially support long arm jurisdiction under this statute because Pennington basically pled that Murrow processed soybean seed which was delivered to and used in Florida in the ordinary course of commerce, and the use of that seed resulted in injury to persons or property within this state.
Having determined that Pennington's allegations are facially sufficient to support long-arm jurisdiction, another point must be decided. As stated in Lakewood Pipe v. Rubaii, 379 So.2d 475, 477 (Fla. 2d DCA 1979), app. dism. 383 So.2d 1201 (Fla. 1980), "[e]ven where there is facial jurisdiction under the Florida long arm statute, the party over which jurisdiction is asserted must have had sufficient minimum contacts with Florida to satisfy due process requirements." See also Ford Motor Co. v. Atwood Vacuum Machine Co., 392 So.2d 1305, 1308 (Fla. 1981); Osborn v. University Soc., Inc., 378 So.2d 873, 874 (Fla. 2d DCA 1979). Precisely this point was raised by Murrow in its motion to dismiss Pennington's amended third party complaint.
"The inquiry into whether there are `minimum contacts' between the forum state and a nonresident business enterprise must look at the nature of the defendant's activities in the state." Ford Motor Co., 392 So.2d at 1310. In this regard, Murrow attached an affidavit to its motion to dismiss, whereby its president attested that Murrow essentially has no business activities or relations within Florida. This affidavit may have been sufficient to show the inapplicability of the long arm statute, if Pennington had simply alleged that Murrow processed seed that was used in Florida. See Harlo Products Corp., v. J.I. Case Co., 360 So.2d 1328, 1330 (Fla. 1st DCA 1978). However, Pennington's allegations are more detailed than this, and coupled with the affidavits submitted in response to Murrow's motions to dismiss, Pennington has adequately stated and substantiated the jurisdictional prerequisites for the use of Florida's long arm statute.
Pennington alleged that after it purchased the soybean seed from Murrow, it advised Murrow to deliver that seed directly to Florida, and Murrow did so, using its own trucks. Pennington's production manager submitted an affidavit attesting to these allegations. Murrow responds to these factors by arguing that all transactions between itself and Pennington took place in Georgia, while Murrow's president attested earlier that Murrow conducts no business in Florida, and that the bagging and delivery of the seed "was done for and on behalf of Pennington ... and at its direction and control." However, we find that Murrow's contentions are unpersuasive.
In determining whether a foreign corporation's activities in a State posit sufficient *160 minimum contacts to allow for the constitutional exercise of the State's long arm jurisdiction, the courts have focused on whether the foreign corporation "`purposefully avails itself of the privilege of conducting activities within the forum state.'" World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980), quoting Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed. 1283 (1958). For example, in Life Laboratories, Inc. v. Valdes, 387 So.2d 1009 (Fla. 3d DCA 1980), the court pointed out the applicability of the "purposefully avails" test in construing § 48.193(1)(f)2, Fla. Stat. The court noted that
A manufacturer whose products pass through the hands of one or more middlemen before reaching their ultimate users cannot disclaim responsibility for the total distribution pattern of the products. If the manufacturer sells its products in circumstances such that it knows or should reasonably anticipate that they will ultimately be resold in a particular state, it should be held to have purposefully availed itself of the market for its products in that state.
Valdes, 387 So.2d at 1011, quoting Buckeye Boiler Co. v. Superior Court, 71 Cal.2d 893, 902; 458 P.2d 57, 64; 80 Cal. Rptr. 113, 120 (1969). See also World-Wide Volkswagen, 444 U.S. at 297-98, 100 S.Ct. at 567-68 ("The forum State does not exceed its powers under the Due Process clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State.")
Pennington's allegations, as supported by affidavits, clearly show that Murrow sold its soybean seed in circumstances whereby it should have reasonably known that its product would be resold in Florida and purchased by consumers in this state. Moreover, by virtue of the fact that Murrow actually delivered its product to Florida, it appears that Murrow knew that its product would be resold and purchased here, and that Murrow was directly (or at least indirectly) serving the market for its product in Florida.
Obviously, there was more than a simple fortuity or a mere likelihood that Murrow's product found its way into Florida. See World-Wide Volkswagen, 444 U.S. at 295, 297, 100 S.Ct. at 566, 567. Instead, it is readily apparent that Murrow has "purposely availed" itself of acting or conducting activities in Florida, and accordingly, Florida's exercise of long arm jurisdiction over Murrow, pursuant to § 48.193(1)(f)2, Fla. Stat., will not violate due process requirements. Therefore, we reverse the trial court's Order which dismissed Pennington's amended third party complaint.
LARRY G. SMITH and BOOTH, JJ., concur.