403 So.2d 1050 (1981)
Harlan C. "Bud" LACY, Appellant,
v.
FORCE V CORPORATION d/b/a JBF Printing Company, Appellee.
No. WW-374.
District Court of Appeal of Florida, First District.
September 4, 1981.
*1051 Robert C. Elmore of Ferrin C. Kemp Campbell, Sr., Crestview, for appellant.
Mark Evan Frederick, Fort Walton Beach, for appellee.
ERVIN, Judge.
Lacy brings this interlocutory appeal from an order denying his motion to abate, which asserted lack of personal jurisdiction over him. He argues that the court's assumption of jurisdiction, pursuant to the applicable provision of Florida's long-arm statute, Section 48.193(1)(g),[1] is erroneous because (1) he did not breach his contract by failing to perform acts in Florida required of him by his contract, or (2) alternatively, Section 48.193(1)(g) is unconstitutional in its application to the circumstances in this case due to the fact that appellant did not have sufficient minimum contacts with Florida to satisfy due process requirements, as evidenced by Lacy's unrefuted affidavit in support of his motion. We affirm as to both points.
The record on appeal is sparse; the relevant information is limited to the appellee's complaint and the appellant's motion and supporting affidavit, showing that the appellee/plaintiff, Force V Corporation, a printing concern doing business in Ft. Walton Beach, Florida, filed a complaint for damages against Lacy, a sole proprietor doing business as Lacy Printing and Machine Company in Dayton, Ohio, against Coastal Graphics, Inc., and against Fred Eggers, an employee of Coastal Graphics,[2] alleging misrepresentation and breach of contract. It was alleged that in February, 1978, the parties entered into a three-way agreement for the sale and purchase of goods to be *1052 delivered at the appellee's place of business in Okaloosa County, Florida. Eggers, working out of Atlanta, was a middleman or broker in the deal, and, while acting as agent for the appellee, he entered into a sales agreement with the appellant whereby the appellee agreed to purchase some printing equipment for the sum of $5,600. The agreement provided that Eggers would hold appellee's check in escrow until the equipment arrived at the appellee's place of business in Ft. Walton Beach and conditioned the sale upon the appellee's approval and satisfaction of the equipment. On February 14, 1978, the appellee sent Eggers a purchase order referring to the subject equipment, and Eggers forwarded the appellee's check to the appellant prior to delivery. The delivery was late, and when the equipment finally arrived, it did not conform to specifications.
The appellant's affidavit stated that his business was not incorporated; that he had no business connections in Florida whatsoever, except an unsolicited phone call by the appellee regarding the machinery in which information concerning specifications and shipping arrangements was sought.
As to Lacy's first point, that the facts alleged do not disclose a contractual breach, the plaintiff is of course required to plead sufficient jurisdictional facts showing that the conduct alleged falls within the applicable provisions of the long-arm statute. Electro Engineering Products Co., Inc. v. Lewis, 352 So.2d 862, 864 (Fla. 1977). Since, for purposes of a motion to dismiss, all well pleaded facts in a complaint are accepted as true, we consider that appellee has alleged facts which adequately reveal that the contract was to be performed in Florida and was there breached. The appellant's affidavit did not assert any facts which rebutted this contention.
The constitutional issue raised under the latter point is, however, much more complex than that asserted under the former. Appellant's contention that there were insufficient minimum contacts between the defendant and the forum state, and therefore that Florida could not constitutionally assert personal jurisdiction over him, rests upon his belief that a single, isolated act with the forum by a nonresident defendant can never meet the minimum contacts test required by International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). Appellant relies upon certain supportive language found in Hyco Manufacturing Co. v. Rotex International Corp., 355 So.2d 471 (Fla. 3d DCA 1978); Elmex Corp. v. Atlantic Federal Savings & Loan Assoc., 325 So.2d 58 (Fla. 4th DCA 1976), and Lyster v. Round, 276 So.2d 186 (Fla. 1st DCA 1973).
Elmex and Lyster, however, are inapplicable to the case at bar because those two cases construed a different long-arm statute (Section 48.181) than the one now before us. The provisions of Section 48.181 apply to nonresident persons who "carry on a business or business venture in this state." Those words were interpreted by Elmex and Lyster as requiring a continuous, systematic activity with the forum by the out-of-state business enterprise. The statutory language of Section 48.193, however, is much broader in scope than that of Section 48.181. Service upon a nonresident defendant can be made under Section 48.193 for a number of reasons; the operating or conducting of a "business or business venture in this state" is only one of several activities delineated by that statute.
Lacy's reliance upon Hyco is, however, far more supportive of his position. The Third District's opinion in Hyco  unlike those in Elmex and Lyster  addressed the constitutionality of Section 48.193 as applied to the facts before it, and determined that a hoist manufactured by the defendant in Ohio, and later placed onto a trailer in Pennsylvania by a different corporation, which in turn sold the trailer to a company located in Florida, lacked a substantial connection with Florida, so that its Ohio manufacturer could not be subjected to the jurisdiction of the state of Florida. Hyco concluded with the broad statement that "an isolated act will not subject a foreign corporation or a nonresident to the jurisdiction of a Florida court ...", 355 *1053 So.2d at 475. A more accurate statement is that a single act may, depending upon the character or quality of the contact, subject the foreign corporation or nonresident to the jurisdiction of Florida courts.
Despite the contradictory state court opinions on the subject, the United States Supreme Court, in a series of decisions beginning with International Shoe Co. v. Washington, supra, and continuing through World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), has never unqualifiedly held that a single, isolated transaction with the forum by an out-of-state defendant is so insubstantial that the forum would in all cases be precluded from asserting in personam jurisdiction. Indeed, in McGee v. International Life Insurance Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), the Court upheld against constitutional attack the application of California's long-arm statute over a Texas insurance company, despite facts showing only one contact by the insurer with California.[3] There the company had mailed a reinsurance certificate to an insured living in California, offering to insure him in accordance with the same terms of his original policy. The Court ruled, although the company had never maintained any office or agent in California, had never solicited or done any business in California, apart from the particular policy involved in that case, that the Texas insurer's single contact with the forum was sufficient to confer jurisdiction upon California because the policy was delivered in California, the premiums were mailed from there, the insured was a resident of that state when he died; therefore it would not be unfair or unreasonable to require the nonresident to defend the suit in California.[4]
Recently the Florida Supreme Court in Ford Motor Co. v. Atwood Vacuum Machine Company, 392 So.2d 1305 (Fla. 1981), required an out-of-state component parts manufacturer to submit itself to the jurisdiction of the Florida courts. Although the Atwood decision was not concerned with a situation showing that the nonresident had established a single contact with Florida, the opinion cited with approval certain out-of-state cases that had involved facts disclosing only isolated transactions. For example, the Atwood court's acceptance of the rule stated in Gray v. American Radiator & Standard Sanitary Corp., 22 Ill.2d 432, 176 N.E.2d 761 (1961), to the effect "that a manufacturer engaged in interstate commerce, which expects its products to be used in other states, can reasonably expect to be held subject to the jurisdiction of those other states' courts... .", 392 So.2d at 1312, is significant because the record before the court in Gray revealed that the nonresident defendant had established only one contact with Illinois. There, a product manufactured by the defendant in Ohio was incorporated by another manufacturer in Pennsylvania into a hot water heater, which in the normal stream of commerce, was sold to an Illinois consumer, who, during its use, was injured by the heater's explosion. The Illinois Supreme Court's opinion emphasized the commercial nature of the transaction, observing that the manufacturer's shipping "of such products in the ordinary course of commerce is [a] sufficient contact with this State to *1054 justify a requirement that he defend here." 176 N.E.2d at 766.
The Florida Supreme Court's opinion in Ford Motor Co. also observed that
[o]ther cases have held that the occurrence of a single injury in the state is a sufficient basis upon which to conclude that the nonresident manufacturer's product got there through normal commercial channels, thus justifying the conclusion that sufficient contacts existed. E.g., Continental Oil Co. v. Atwood & Morrill Co., 265 F. Supp. 692 (D.Mont. 1967); Duignan v. A.H. Robins Co., 98 Idaho 134, 599 P.2d 750 (1977).
392 So.2d at 1313 (e.s.).
Thus, it clearly appears from the above decisions that a single, isolated transaction by the nonresident defendant does not necessarily offend due process. An examination of relevant cases reveals that the substantiality of the nonresident's tactile encounter with the forum for due process purposes depends upon a number of variables.
Since it is difficult to formulate a general rule as to what circumstances should be considered in seeking a solution to the inquiry of whether the minimum contacts test has been met, it is often necessary to weigh the facts of each particular case to determine "whether the requisite `affiliating circumstances' are present." Kulko v. Superior Court, 436 U.S. 84, 92, 98 S.Ct. 1690, 1697, 56 L.Ed.2d 132 (1978).
Unquestionably the single most important factor to be considered is whether "the defendant's conduct and connection with the forum ... are such that he should reasonably anticipate being haled into court there... ." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. at 297, 100 S.Ct. at 567, 62 L.Ed.2d at 501. It is essential that this circumstance be considered from the perspective of the defendant  not from that of the plaintiff. See Shaffer v. Heitner, 433 U.S. 186, 204, 97 S.Ct. 2569, 2580, 43 L.Ed.2d 683 (1977). The reasonable foreseeability factor is frequently applied to force a nonresident defendant to answer a suit within the forum if it "purposefully avails itself of the privilege of conducting activities within the forum... ." Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958). For example, the Florida Supreme Court's opinion in Ford Motor Co. v. Atwood Machine Co., supra, emphasized the willful character of an out-of-state component parts manufacturer's act in selling an allegedly defective part to Ford Motor Company, which in turn incorporated the part into one of its vehicles. The automobile was later sold to a Florida resident, who was allegedly injured by the part. The court held that Atwood's deliberate sale of the part to a nationwide manufacturer and distributor of motor vehicles, although not directly shipped by Atwood to Florida, made it reasonably foreseeable that the part would eventually be found within the state of Florida,[5] since it was motivated by the "`efforts of the [defendant] ... to serve directly or indirectly the market for his products in other States, ...'", and the defendant overtly carried out its motivation by placing "`its products into the stream of commerce with the expectation that they would be purchased by consumers in the forum state.'" 392 So.2d at 1311 (quoting from World-Wide Volkswagen Corp. v. Woodson, 444 U.S. at 297, 298, 100 S.Ct. at 567, 62 L.Ed.2d at 501, 502). Accord, Pennington Grain & Seed, Inc. v. Morrow Brothers Seed Co., Inc., 400 So.2d 157 (Fla. 1st DCA 1981).
If, on the other hand, the activity or contact is deemed fortuitous, not deliberate, the courts often hold that the defendant's conduct is not such that it should reasonably *1055 anticipate being called upon to defend a suit before a court in a foreign jurisdiction. For example, in Denckla, the court held that the contacts of the defendant trustee with Florida, when viewed from the defendant's perspective, were altogether non-purposeful, and therefore not sufficiently substantial to confer jurisdiction upon the forum. The record revealed that Florida's only connection with a trust, executed in Delaware, was that its settlor had moved there, had there received trust income, and had there executed a power of appointment. On the other hand, the trustee had never maintained any office in Florida, had never solicited or transacted business there, nor had any of the trust assets been held or administered in Florida.
The Denckla analysis was given further refinement in World-Wide Volkswagen Corp. v. Woodson, supra, in which the Court declined to permit Oklahoma to assert jurisdiction over two New York corporations (a regional wholesale distributor of automobiles and a retailer) whose only contact with Oklahoma was the sale of an automobile in New York which later became involved in an accident in Oklahoma while the car was passing through Oklahoma on its way to Arizona. The Court viewed the character of that one isolated occurrence, the sale, and whatever inferences could be drawn from it, i.e., the adventitious circumstance that the accident occurred in Oklahoma, and concluded that the contact was far too attenuated to justify that state's exercise of in personam jurisdiction.
Our court has also refused to permit Florida courts from acquiring jurisdiction over nonresident defendants in instances where the nonresidents' contacts with this state were deemed merely fortuitous. See Dunn v. Upjohn Co., 350 So.2d 127 (Fla. 1st DCA 1977) (pharmacist whose business was located in the state of Georgia sold allegedly defective drugs in Georgia to a Florida resident); Jack Pickard Dodge, Inc. v. Yarbrough, 352 So.2d 130 (Fla. 1st DCA 1977) (a South Carolina automobile dealer serviced an automobile which ultimately found its way into the state of Florida and caused injury to persons within the state).[6]
The allegations in the complaint before us  unlike those in World-Wide Volkswagen Corp. or Ford Motor Co.  ground the forum's jurisdiction on that provision of the statute relating to a breach of "contract in this state by failing to perform acts required by the contract to be performed in this state ...", Section 48.193(1)(g), and not upon the statute's provisions pertaining to products liability, as provided under Section 48.193(1)(f)2. Although undoubtedly the same analysis would apply to any action in which an issue arises as to whether it is reasonably foreseeable for the defendant to be required to defend the suit within the forum, there are additional facts  not relevant to allegations of jurisdiction predicated upon products liability  to be considered if the jurisdictional activity relates to an alleged contractual breach.[7] The facts outlined in Products Promotions, Inc. v. Cousteau, 495 F.2d 483 (5th Cir.1974), provide a suitable benchmark when the jurisdictional assertion is founded upon contract.
Cousteau held that the state of Texas could properly subject a French company to its jurisdiction, notwithstanding facts revealing *1056 that the company maintained no regular business there, conducted no local advertising, solicited no business, nor did anything aside from the single, isolated contract which it entered into with the appellant in Texas. The court employed a dual test in its determination of whether the forum state could assume jurisdiction under the circumstances without depriving the defendant of due process: First, there had to be some minimum contact with the state which resulted from an affirmative act of defendant; second, it must be fair and reasonable to require the defendant to come into the state and defend the action. In holding that the former requirement had been met, the court observed that the contract was executed within the state of Texas;[8] therefore, the enforcement and protection of the defendant's rights under the contract necessarily depended upon the laws of Texas. Additionally, it noted that the defendant's contact with the state was deliberate, rather than fortuitous, in that the defendant chose to enter into a contract with the plaintiff which was to be performed in Texas.
As to the second requirement of the dual test, the court considered it necessary to look to the relative conveniences and inconveniences of the parties, as well as to the basic equities involved in either prosecuting or defending the suit within the forum. Because the plaintiff was a Texas resident, and the contract was made in Texas, Texas had a legitimate and reasonable interest in providing a forum for the suit. Finally, in its consideration of all the factors, the court concluded that any hardship or inconvenience placed upon the defendant in having to defend the suit in Texas did not rise to the level of a denial of due process.
The amalgam of the relevant factors recited in the above decisions convinces us that the lower court was correct in denying Lacy's motion to quash process. Lacy did not rebut Force V's assertions in its complaint that the contract was to be performed in Florida. Appellee specifically alleged that under the terms of the contract, the printing press was to be of certain size specifications; that Force V's check was to be held in escrow until the press met with Force V's approval and satisfaction; that the press was in fact delivered to plaintiff's place of business in Okaloosa County, and that the contract was there breached due to Lacy's failure to provide equipment complying with the contractual specifications. The law generally recognizes that the place where the last act necessary for the completion of the contract is where the contract first creates a legal obligation. 1 Williston on Contracts, § 97 at 356 (3 ed. Jaeger (1957)).
Because the contract was required to be performed in Florida, it was not unreasonable from the defendant's perspective to foresee that an alleged breach of the contract might be litigated in Florida, or that enforcement of Lacy's rights under the contract might depend on the laws of Florida. Lacy's delivery of the printing press to Force V could hardly be deemed a fortuitous, nondeliberate act. He purposefully employed the normal channels of commerce as a conduit to market his product in another state. Consequently, his conduct in connection with the forum is such that he should reasonably anticipate being brought into Florida to defend any alleged breach of the contract. Finally, we consider that the legislature, through its enactment of Section 48.193, has expressed an important policy consideration that Florida residents, whose contracts are to be performed in this state, shall be protected here from any potential breach of their contracts by out-of-state persons.
AFFIRMED.
ROBERT P. SMITH, Jr., C.J. and McCORD, J., concur.
NOTES
[1] § 48.193(1)(g), Fla. Stat. (1979) provides:

(1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits that person and, if he is a natural person, his personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following:
* * * * * *
(g) Breaches a contract in this state by failing to perform acts required by the contract to be performed in this state.
[2] The latter two defendants are not parties to this appeal.
[3] The McGee result was foretold seven years earlier in Travelers Health Ass'n v. Commonwealth of Virginia, 339 U.S. 643, 654, 70 S.Ct. 927, 933, 94 L.Ed. 1154, n. 9 (1950): "`Some casual or even single acts done within the borders of the sovereignty may confer power to acquire jurisdiction of the person, provided there is also reasonable provision for giving notice of the suit in accordance with minimal due process requirements.'" (Douglas, J., concurring, quoting from Frene v. Louisville Cement Co., 77 U.S.App.D.C. 129, 134 F.2d 511, 516 (1943).) (e.s.)
[4] An additional reason justifying California's assertion of jurisdiction over the Texas insurer was advanced by the Court the following year in Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), which observed that California had enacted special legislation (the Unauthorized Insurer's Process Act, West's Ann.Cal.Ins. Code, § 1610 (et. seq.)), which expressed the state's manifest interest in providing redress for its citizens who had been injured by nonresidents who were engaged in an activity which the state treated as exceptional, and therefore considered subject to special regulation.
[5] The character of the nonresident's act was not observed in such cases as Harlo Products Corp. v. J.I. Case Co., 360 So.2d 1328 (Fla. 1st DCA 1978), or Aero Mechanical Electronic Craftsman v. Parent, 366 So.2d 1268 (Fla. 4th DCA 1979). Contra Life Laboratories, Inc. v. Valdes, 387 So.2d 1009 (Fla. 3d DCA 1980). Since the activities of the nonresident components parts manufacturers in both Harlo and Parent were no less deliberate than those of the out-of-state manufacturer in Atwood, the decisions in those two cases should be considered implicitly disapproved by the Atwood opinion.
[6] A more thorough list of non-deliberate activities is set out in World-Wide Volkswagen Corp. v. Woodson, supra, 444 U.S. 286 at 295, 100 S.Ct. at 566, 62 L.Ed.2d at 500.
[7] It should be observed that the authorities are not in general agreement as to whether the provisions of long-arm statutes relating to jurisdictional facts involving injuries caused by products are applicable to other activities, such as breach of contract. See 62 Am.Jur.2d, Process, § 79 (1972). At any event, the Supreme Court, without distinguishing between the types of actions, has suggested that the following circumstances should be considered in deciding whether the quality of the contact has the requisite substance to meet International Shoe's test: The forum's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several states in furthering fundamental substantive social policies. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. at 292, 100 S.Ct. at 564, 62 L.Ed.2d at 498.
[8] This is not an essential requirement. Although the contract may not have been executed or have required performance within the forum, the forum is not necessarily barred from assuming jurisdiction if it has a significant contact, or a significant aggregation of contacts, so that its choice of law is neither arbitrary nor fundamentally unfair. See Allstate Ins. Co. v. Hague, 449 U.S. 302, 101 S.Ct. 633, 640, 66 L.Ed.2d 521 (1981).