471 So.2d 1365 (1985)
DUKE POWER COMPANY, Appellant,
v.
Tony Lee HOLLIFIELD and Seaboard System Railroad, Inc., Appellees.
No. BE-337.
District Court of Appeal of Florida, First District.
July 3, 1985.
Shawn Ettingoff of Mathews, Osborne, McNatt, Gobelman and Cobb, Jacksonville, for appellant.
Joseph P. Milton of Howell, Lyles, Braddock & Milton, Jacksonville, for appellees.
WIGGINTON, Judge.
Duke Power Company brings this interlocutory appeal from the trial court's order denying Duke Power's motion to dismiss, which was based on an alleged lack of personal jurisdiction. Duke Power argues that the court's assumption of jurisdiction, pursuant to section 48.193(1)(g),[1] is erroneous since Duke Power does not conduct, nor has it ever conducted, business in Florida. We reverse.
*1366 The cause of action arose in 1983 when Hollifield filed a complaint in Duval County, Florida, against Seaboard System Railroad, Inc., whereby he sought to recover damages for alleged personal injuries under the Federal Employers' Liability Act. Hollifield alleged that in 1980, he was engaged in the performance of his duties as a Seaboard employee at or near Duke Power's Cliffside Plant in North Carolina when he suffered injuries as a result of a train derailment caused by Seaboard's negligence.
Seaboard answered Hollifield's complaint and served a third party complaint for indemnity upon Duke Power. The third party complaint was based upon a 1950 contract between the Clinchfield Railroad Company and Duke Power concerning a spur track that was previously constructed by Clinchfield, at Duke Power's expense, pursuant to a 1939 contract. Clinchfield was the name under which the Atlantic Coast Line Railroad Company and the Louisville and Nashville Railroad Company operated certain properties.
Under the 1939 contract, Clinchfield, which operated a railroad line from Elkhorn, Kentucky, to Spartanburg, South Carolina, agreed to build a connecting spur track from that line to Duke Power's North Carolina facility. Pursuant to that contract, Duke Power had constructed certain side and storage tracks at the terminus of the spur track. Under the terms of the 1950 contract, Clinchfield agreed to operate over the side and storage tracks in order to serve Duke Power, and Duke Power agreed to maintain the side and storage tracks, as well as to
... indemnify and save harmless Clinchfield against any and all damage resulting from negligence of [Duke Power], its servants and employees, in and about said side and storage tracks; and, furthermore, against any and all claims, demands, suits, judgments or sums of money accruing for loss or damage by fire communicated by locomotive engines or trains of Clinchfield to buildings or structures of [Duke Power] and to the contents of such buildings or structures, or to coal or other property stored by or with the consent of [Duke Power] upon or near any of said side or storage tracks.
Seaboard succeeded to the rights of Clinchfield by virtue of a merger or acquisition which took place in or after 1980. Accordingly, it based its third party complaint upon the 1950 contract, alleging that vis-a-vis Hollifield's action against Seaboard, Duke Power breached a contractual duty to defend Seaboard, previously owed to Clinchfield, which duty was to have been performed in Duval County, Florida.[2]
Duke Power filed a motion to dismiss the third party complaint. In the motion and accompanying affidavit, Duke Power stated that it is a foreign corporation which does not conduct business in the State of Florida. It was also noted that none of the parties to the 1950 contract were corporations having executive offices in Florida, and consequently, that no performance under the 1950 contract had ever been contemplated in Florida. Nevertheless, the trial court summarily denied the motion to dismiss.
On appeal, Duke Power argues that, assuming the allegations in Seaboard's third party complaint to be true,[3] in order for the court to exercise jurisdiction over it, Duke *1367 Power must have had sufficient minimum contacts with Florida to satisfy due process requirements. On the other hand, Seaboard argues that a facial showing of a breach of a contract to be performed in Florida is sufficient to establish jurisdiction under section 48.193(1)(g), and that the indemnification agreement "meets and exceeds" the constitutionally required "minimum contacts" with Florida. For that proposition, Seaboard relies primarily on the holding in Engineered Storage Systems, Inc. v. National Partitions & Interiors, Inc., 415 So.2d 114 (Fla. 3d DCA 1982), which suggests that once jurisdiction over a party is satisfied under section 48.193(1)(g), constitutional "minimum contacts" considerations are no longer relevant.
The interpretation of section 48.193(1)(g) espoused by Seaboard has not been embraced by the majority of the courts in this state, nor by the United States Supreme Court. With the exception of Engineered Storage Systems, the necessity for a constitutional due process analysis under section 48.193(1)(g) has been consistently recognized by Florida's courts. See e.g., Kane v. American Bank of Merritt Island, 449 So.2d 974, 975-976 (Fla. 5th DCA 1984); Scordilis v. Drobnicki, 443 So.2d 411, 412-414 (Fla. 4th DCA 1984); Lacy v. Force V Corp., 403 So.2d 1050, 1055-1056 (Fla. 1st DCA 1981); Osborn v. University Society, Inc., 378 So.2d 873, 874 (Fla. 2d DCA 1979).
The United States Supreme Court has clarified the issue by reaffirming the classic constitutional due process dictates laid down by International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), Shaffer v. Heitner, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977), and World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), in regard to the exercise of personal jurisdiction under section 48.193(1)(g). In the very recent case of Burger King Corporation v. Rudzewicz, ___ U.S. ___, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985), the question propounded to the Supreme Court was whether the federal district court's exercise of personal jurisdiction based on section 48.193(1)(g), Florida Statutes (Supp. 1984), over a Michigan resident, who allegedly had breached a franchise agreement with a Florida corporation by failing to make required payments in Florida, offended "`traditional conception[s] of fair play and substantial justice'" embodied in the Due Process Clause of the Fourteenth Amendment. ___ U.S. at ___, 105 S.Ct. at 2178. According to the Supreme Court, the "constitutional touchstone remains whether the defendant purposefully established `minimum contacts' in the forum State. [citation omitted]" ___ U.S. at ___, 105 S.Ct. at 2183. The Court went on to discuss the foreseeability test as analyzed in World-Wide Volkswagen, and observed that
... the foreseeability that is critical to due process analysis ... is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there. [citing to World-Wide Volkswagen, 444 U.S. at 297, 100 S.Ct. at 567]
Id.
In defining when it is that a potential defendant should "`reasonably anticipate'" out-of-state litigation, the court fell back on the reasoning in Hanson v. Denckla that
... it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.
Id. As the Court emphasized, this "`purposeful availment'" requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of `random,' `fortuitous,' or `attenuated' contacts. [citations omitted.]" Id.
Although, by applying these principles to the circumstances before it in Burger *1368 King, the Supreme Court concluded that the federal district court's exercise of jurisdiction did not offend due process,[4] in reaching that conclusion the court examined an issue relevant to the instant case, viz, "whether an individual's contract with an out-of-state party alone can automatically establish sufficient minimum contacts in the other party's home forum." ___ U.S. at ___, 105 S.Ct. at 2185 [emphasis in original]. In answering that question in the negative, the Court noted that it had "long ago rejected the notion that personal jurisdiction might turn on `mechanical' tests ... or on `conceptualistic ... theories of the place of contracting or of performance' ... [citations omitted.]" Instead, it emphasized
... the need for a "highly realistic" approach that recognizes that a "contract" is "ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction" ... It is these factors  prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing  that must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum.
Id.
Finally, the Court rejected "any talismanic jurisdictional formulas," instead advising that the facts of each case must be weighed in determining whether the exercise of personal jurisdiction would comport with the notions of fair play and substantial justice, and warning that
... [t]he "quality and nature" of an interstate transaction may sometimes be so "random," "fortuitous," or "attenuated" that it cannot fairly be said that the potential defendant "should reasonably anticipate being haled into court" in another jurisdiction.
Id., at ___, 105 S.Ct. at 2189 [citations and footnotes omitted].
Guided by the above principles, we hold that the trial court erred in denying Duke Power's motion to dismiss. By merely entering into an interstate contract in 1950, Duke Power did not purposefully establish minimum contacts with the State of Florida. In considering the factors set forth in Burger King Corporation v. Rudzewicz, such as "prior negotiations and contemplated future consequences," the contract terms, and the parties' "actual course of dealings," id., at ___, 105 S.Ct. at 2185, we can only conclude that Duke Power's alleged contact with this state was fortuitous.
When Duke Power entered into the 1950 contract with Clinchfield, it was dealing with a Tennessee corporation (Clinchfield); a Virginia corporation (Atlantic Coast Line Railroad Company); and a Kentucky corporation (Louisville and Nashville Railroad Company). Duke Power is a New Jersey corporation with a plant in North Carolina. Thus, the reasonable geographical limits of the contract were Tennessee, Virginia, Kentucky, New Jersey, and North Carolina (and perhaps South Carolina, the end of the line for Clinchfield). Therefore, at the time of contracting, Duke Power could not have reasonably anticipated "being haled into court" in Florida by a Florida corporation that merged with Clinchfield thirty years after the original contract was signed. Burger King Corporation v. Rudzewicz; World-Wide Volkswagen Corp. v. Woodson; Lacy v. Force V Corp.; Scordilis v. Drobnicki. Never has Duke Power purposefully availed itself of the privilege of conducting business activities within the State of Florida, thereby invoking the benefits and protection of Florida's laws. To here rest personal jurisdiction solely on the basis of the 1950 contract between foreign corporations, and the alleged breach thereof, would unduly strain all notions of fair play and substantial justice.
*1369 Accordingly, the order is REVERSED, and the cause REMANDED, for further proceedings consistent with this opinion.
BOOTH, C.J., and BARFIELD, J., concur.
NOTES
[1] Section 48.193(1)(g), Florida Statutes (1983) provides:

(1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits that person and, if he is a natural person, his personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following:
* * * * * *
(g) Breaches a contract in this state by failing to perform acts required by the contract to be performed in this state.
[2] Seaboard maintains headquarters in Jacksonville, Florida, and its amenability to Hollifield's suit is not at issue here.
[3] Since Seaboard's allegations are accepted as being true for purposes of the motion to dismiss, Duke Power has not challenged Seaboard's interpretation of the indemnification clause of the 1950 contract as conferring on Duke Power a duty to defend. Cf. Lacy v. Force V Corp., 403 So.2d 1050, 1052 (Fla. 1st DCA 1981).
[4] The court found that Rudzewicz had established a substantial and continuing relationship with Burger King's Miami headquarters, received fair notice from the contract documents and the course of dealing that he might be subject to suit in Florida, and failed to demonstrate how jurisdiction in that forum would otherwise be fundamentally unfair. ___ U.S. at ___, 105 S.Ct. at 2189.