488 So.2d 83 (1986)
AETNA LIFE & CASUALTY COMPANY, As Subrogee of Energy Conservation, Unlimited, Inc., Appellant,
v.
THERM-O-DISC, INC., Appellee.
No. BG-422.
District Court of Appeal of Florida, First District.
February 12, 1986.
Rehearing Denied May 19, 1986.
*85 Harris Brown, of Mathews, Osborne, McNatt, Gobelman & Cobb, Jacksonville, for appellant.
Daniel C. Shaughnessy, of Coker, Myers & Schickel, Jacksonville, for appellee.
BARFIELD, Judge.
Aetna Life and Casualty Company (Aetna) appeals an order granting appellee's motion to dismiss for lack of jurisdiction. Appellant asserts that the trial court erred in concluding that "there are insufficient allegations to bring Defendant within the provisions of Section 48.193, Florida Statutes." We agree and reverse.
Aetna is the liability insurer for Energy Conservation Unlimited (ECU), which manufactures a device that transfers heat from air conditioning units to hot water heaters. Although this mechanism is not activated in the winter, it remains filled with water and requires protection from freezing. Appellee Therm-O-Disc manufactures a switch which is intended to activate a circulating pump when the temperature reaches freezing, to prevent damage to the heat transfer unit.
ECU, a Florida corporation, purchased switches from Therm-O-Disc, a foreign corporation with its principal place of business in Ohio. The switches were shipped to ECU's office in Florida and incorporated by ECU into the heat transfer units, which were then distributed to various consumers, including the U.S. Government for use at base housing projects in Georgia and South Carolina. During the winter of 1981-82, the switches failed to activate the circulating pumps, resulting in substantial property damage in Georgia and South Carolina, for which Aetna reimbursed the U.S. Government and thereby became subrogated to ECU's rights against Therm-O-Disc.
Aetna subsequently sued Therm-O-Disc in five separate counts alleging negligence, breach of express warranty, breach of implied warranty of merchantability, breach of implied warranty of fitness for a particular purpose, and strict liability. Therm-O-Disc moved to dismiss for lack of jurisdiction and the original complaint was dismissed with leave to amend. Aetna's amended complaint alleged that Therm-O-Disc sold and delivered switches to ECU in Florida, that Therm-O-Disc engaged in a business activity or venture in Florida by negotiating and completing this sale within the state, that Therm-O-Disc breached the contract and breached express and implied warranties in Florida due to the failure of its product to conform to its intended use, that Therm-O-Disc was engaged in solicitation of the sale of switches to ECU in Florida, and that the switches were processed, serviced or manufactured by Therm-O-Disc, were used or consumed within Florida in the ordinary course of commerce, trade, or use, and said use resulted in damages to ECU.
*86 Therm-O-Disc moved a second time to dismiss for lack of jurisdiction and filed a supporting affidavit of its product safety director which stated that Therm-O-Disc has no business office, no property, and no agent or representative in Florida, that the switches were custom-made pursuant to specifications received from ECU, that Therm-O-Disc does not offer its products for sale to the general public in Florida and did not engage in solicitation of the sale of the custom-made switches, and that Therm-O-Disc did not maintain any degree of direction or control over the switches once they had been delivered to ECU. In response, Aetna filed two affidavits, from the vice-president of ECU and from ECU's purchasing manager. The vice-president's affidavit stated that the sale and delivery of the switches from Therm-O-Disc were completed in Florida and that the switches were incorporated into the heat transfer units in Florida. The purchasing manager's affidavit stated that Therm-O-Disc's products are used by other manufacturers in Florida, that the switches are a standard type, calibrated to fit the specific needs of the customer, and that she had numerous telephone conversations with Therm-O-Disc, which provided input as to the technical requirements for the switches. The affidavit further stated that Therm-O-Disc entered into a contract for the delivery of its switches to ECU in Longwood, Florida, that the switches were delivered pursuant to this contract in Florida, and that the contract was breached in Florida in that the switches did not comply with their intended use. The affidavit also stated that Therm-O-Disc's district manager personally made a sales call to the office of ECU in Longwood, Florida, soliciting the business of ECU. Attached to this affidavit were invoices manifesting the existence of a contract between the parties.
In its order granting the motion to dismiss for lack of jurisdiction, the trial court concluded that there were insufficient allegations to bring the defendant within the provisions of the long-arm statute and the cases interpreting that statute. Noting that it was not clear from the purchasing manager's affidavit whether Therm-O-Disc's district manager visited ECU in connection with the contract described in the amended complaint, the court gave Aetna fifteen days within which to file a further affidavit. Instead, Aetna filed this appeal.
Section 48.193, Florida Statutes (1981), lists the acts which will subject a person to the jurisdiction of the courts of this state for any cause of action arising from the specified acts. The procedure to be followed in testing jurisdiction under the long-arm statute is as follows: The plaintiff must initially allege in its complaint sufficient jurisdictional facts to show compliance with the statute, at which time the burden shifts to the defendant to make a prima facie showing of the inapplicability of the statute, and thereafter plaintiff is required to substantiate its jurisdictional allegations. Pace Carpet Mills, Inc. v. Life Carpet and Tile Company, Inc., 365 So.2d 445 (Fla. 4th DCA 1978). If the plaintiff's allegations in support of jurisdiction are challenged, and that challenge is supported by affidavit, plaintiff must then support its jurisdictional allegations by affidavit or other proof. Sims v. Sutton, 451 So.2d 931 (Fla. 3d DCA 1984); Newton v. Bryan, 433 So.2d 577 (Fla. 5th DCA 1983); Hickok Teaching Systems, Inc. v. Equitech Training Systems, Inc., 421 So.2d 772 (Fla. 4th DCA 1982); and Cosmopolitan Health Spa, Inc. v. Health Industries, Inc., 362 So.2d 367 (Fla. 4th DCA 1978).
Before a state court may acquire personal jurisdiction over a foreign corporation, the foreign corporation must have initiated some minimum contact with the forum state, so that maintenance of the suit does not offend traditional notions of fair play and substantial justice. Harlo Products Corporation v. J.I. Case Company, 360 So.2d 1328 (Fla. 1st DCA 1978). It is necessary that there be some act by which the foreign corporation purposely avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protection of its laws. Id. at 1329. Long arm statutes are *87 to be strictly construed, in order to guarantee compliance with due process requirements. Citizens State Bank v. Winters Government Securities Corporation, 361 So.2d 760 (Fla. 4th DCA 1978); Bank of Wessington v. Winters Government Securities Corporation, 361 So.2d 757 (Fla. 4th DCA 1978).
Aetna's amended complaint indicates that appellant sought to establish jurisdiction under subsections (1)(a) (engages in a business venture in the state), (1)(f) (causes injury to persons or property within the state), and (1)(g) (breaches a contract in the state). The allegations that Therm-O-Disc is engaged in a business venture in this state appear to be insufficient to establish in personam jurisdiction, so that jurisdiction has not been established under subsection (1)(a). Jurisdiction has also not been established under subsection (1)(f), which applies where physical injury has occurred to persons or property within the state, not, as here, where physical injury to property outside the state has resulted in financial injury to a Florida corporation or its subrogee. Hyco Manufacturing Company v. Rotex Industrial Corporation, 355 So.2d 471 (Fla. 3d DCA 1978). However, Aetna has sufficiently pled jurisdictional facts showing that Therm-O-Disc's conduct falls within section 48.193(1)(g), which provides that a person who "[b]reaches a contract in this state by failing to perform acts required by the contract to be performed in this state" subjects himself "to the jurisdiction of the courts of this state for any cause of action arising from [the breach]." Aetna has asserted that Therm-O-Disc contracted to deliver switches to ECU in Florida, that these switches, when delivered, did not conform to the specifications and requirements agreed upon, and that the breach of the contract therefore occurred within the State of Florida, upon the delivery of the non-conforming goods.[1] Thermo-Disc's affidavit in support of its motion to dismiss does not appear to refute any of these allegations.
Appellee asserts nonetheless that the invoices attached to appellant's affidavit conclusively show that the legal place of delivery, wherein ECU took beneficial ownership and legal title to the switches, was Mansfield, Ohio, since the invoices recited the goods were shipped to ECU, "F.O.B. Mansfield." Alternatively, appellee argues that no acts required to be performed by it in Florida were not performed, since both parties had intended that the contract between them was for switches which were ultimately to be used in Georgia and South Carolina, and that it was only after the switches were installed in Georgia and South Carolina that they allegedly failed to perform their function and caused property damage in those states. As to the latter argument, appellee appears to have confused the point at which the contract was breached (by delivery of goods which did not conform to the agreement between the parties) and the point at which this breach became known (when the switches failed).
However, as to appellee's first argument, once appellant had sufficiently pled jurisdictional facts showing that appellee breached the contract in Florida by delivering in Florida switches that did not conform to the contractual specifications, and appellee's affidavit did not refute these allegations, appellant was under no duty to further support its allegations by affidavit or other proof. Nevertheless, appellant did submit such proof, in the form of two affidavits and two invoices. The affidavits stated, inter alia, that both the delivery and the breach occurred in Florida, but the invoices indicate that the switches were to be shipped F.O.B. appellee's plant in Ohio. This seems to indicate that delivery, and therefore the breach of contract, occurred in Ohio.[2] If appellee had stated in its affidavit *88 that delivery did not take place in Florida, the invoices would appear to support that position, so that appellant would then have been required to prove, if it could, that in fact delivery did occur in Florida, so as to support its allegations to that effect. The record before us does not indicate whether this issue was addressed by the parties and the court below.
Because the record contains the invoices which appear to contradict appellant's affidavits, we cannot conclusively determine that delivery of the switches took place in Florida. But because appellee did not state in its affidavit, nor argue in its motion to dismiss, that delivery of the switches did not take place in Florida, we are not in a position to make a determination that delivery did not take place in Florida. That determination is for the trial court on remand.
There remains the question of whether Aetna has met the "minimum contacts" test of International Shoe Company v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). In Lacy v. Force V Corporation, 403 So.2d 1050, 1054 (Fla. 1st DCA 1981), this court held that in determining whether the minimum contacts test had been met,
Unquestionably, the single most important factor to be considered is whether "the defendant's conduct and connection with the forum ... are such that he should reasonably anticipate being haled into court there... ." It is essential that this circumstance be considered from the perspective of the defendant  not from that of the plaintiff. The reasonable foreseeability factor is frequently applied to force a nonresident defendant to answer a suit within the forum if it "purposefully avails itself of the privilege of conducting activities within the forum...."
(cites omitted). In Lacy, the allegations in the complaint grounded jurisdiction on section 48.193(1)(g), based upon delivery to a Florida corporation of a printing press which did not conform to the specifications in the contract. The Ohio manufacturer's affidavits stated that it had no business connection in Florida, except an unsolicited phone call by the plaintiff regarding the machinery, in which information concerning specifications and shipping arrangements were sought. The Lacy court employed the dual test of Products Promotions, Inc. v. Cousteau, 495 F.2d 483 (5th Cir.1974), in determining that Florida could assume jurisdiction under the circumstances without depriving the defendant of due process. The court found that the defendant had not rebutted the assertions in plaintiff's complaint that the contract was to be performed in Florida, that the press was in fact delivered to plaintiff's place of business in Florida, and that the contract was there breached due to defendant's failure to provide equipment complying with the contractual specifications. The court held that because the contract was required to be performed in Florida, it was not unreasonable from the defendant's perspective to foresee that an alleged breach of the contract might be litigated in Florida, or that enforcement of the defendant's rights under the contract might depend on the laws of Florida. The court noted that defendant's delivery of the printing press to the plaintiff could hardly be deemed a fortuitous, nondeliberate act, since "he purposefully employed the normal channels of commerce as a conduit to market his product in another state." 403 So.2d at 1056.
The Lacy court considered that the legislature, through its enactment of section 48.193, has expressed an important policy consideration that Florida residents whose contracts are to be performed in this state shall be protected here from any potential *89 breach of their contracts by out-of-state persons. It held that the defendant's "conduct in connection with the forum is such that he should reasonably anticipate being brought in court to defend any alleged breach of the contract." Id. Following Lacy, we hold that if the trial court determines on remand that the delivery of the switches, and therefore any breach of the contract regarding the switches, took place in Florida, sufficient minimum contacts between Therm-O-Disc and the State of Florida will have been shown to satisfy the due process requirements of International Shoe.
The trial court's order granting the motion to dismiss for lack of jurisdiction is REVERSED and the cause is REMANDED to the trial court for an evidentiary hearing, if necessary, and a determination of the place at which the allegedly nonconforming goods were in fact delivered, so as to determine the location of the contract breach, upon which in personam jurisdiction over appellee appears to rest.[3]
BOOTH, C.J., and WIGGINTON, J., concur.

ON MOTION FOR REHEARING
BARFIELD, Judge.
In its motion for rehearing, appellant asserts that this court improperly interpreted section 48.193(1)(f), Florida Statutes (1981), misapprehended the decision of the Third District Court of Appeal in Hyco Manufacturing Company v. Rotex Industrial Corporation, 355 So.2d 471 (Fla. 3d DCA 1978), and overlooked contrary decisions in Pennington Grain & Seed, Inc. v. Murrow Brothers Seed Company, Inc., 400 So.2d 157 (Fla. 1st DCA 1981), and Yale Industrial Products, Inc. v. Gulfstream Galvanizing and Finishing, Inc., 481 So.2d 1304 (Fla. 4th DCA 1986). Appellant argues that the latter case "represents the proper interpretation of § 48.193(1)(f) and case law construing said section." We reject appellant's assertions and the construction placed upon the statute by the Fourth District Court of Appeal in Yale Industrial Products.
In Yale, the court found that the complaint properly pled jurisdiction pursuant to section 48.193(1)(f)(2) where it alleged that defective equipment manufactured by Yale was sole to Material, a Florida corporation, and then to Gulfstream, a Florida corporation, and that the equipment caused "injury" to Gulfstream (damages for failed components and lost production time). The court rejected Yale's contention that the "injury to persons or property" to which the statute refers must consist of bodily injury or physical property damage, citing Pennington in support of its finding that the term "injury" as used in section 48.193(1)(f)(2) "is not confined solely to bodily injury or physical property damage, but also includes the type of damages alleged by Gulfstream." 481 So.2d at 1306.
Pennington involved a suit for breach of implied warranty, negligence and false labeling of seed. This court held that the defendant/third-party plaintiff properly alleged jurisdiction pursuant to section 48.193(1)(f)(2) over a third-party defendant who "processed soybean seed which was delivered to and used in Florida in the ordinary course of commerce, and the use of that seed resulted in injury to persons or property within this state." 400 So.2d at 159. The plaintiffs had alleged that the seed did not fully germinate as expressly and impiedly warranted by the defendant. Pennington does not discuss the type of injury contemplated by the statute, or the specific injury suffered by the plaintiffs in that case. Because of its vagueness Pennington cannot be dispositive of anything beyond the resolution of the controversy it was addressing.
*90 We reject appellant's assertion that we overlooked this court's opinion in Pennington. Because of the factual distinctions between the two cases, we also reject the assertion that our decision in the case at issue has created intradistrict conflict with Pennington. In the case at issue, appellant alleged that the use of Therm-O-Disc's switches in Georgia and South Carolina resulted in property damage in those states and that Aetna suffered financial losses as a result of its reimbursement of the United States Government for the property damage.
We also reject appellant's assertions that we misapprehended the decision of the Third District Court of Appeal in Hyco Manufacturing Company. Although appellant correctly states that Hyco did not specifically address the issue of "financial damages", the facts in Hyco are similar to the facts in the instant case, and we view the language used by the court in that opinion as implying that any "injury" sustained by the plaintiff in that case involved a physical accident which did not take place in Florida, so that no matter what the financial ramifications in Florida of the accident in Ecuador, plaintiffs not only did not, but could not plead jurisdiction under 48.193(1)(f). 355 So.2d at 473. Our construction of the statute is based on logic and the plain meaning of the language of section 48.193, not on the holding in Hyco. To the extent that appellant was misled by the manner in which Hyco was cited in the opinion, that opinion is clarified by this explanation.
As to appellant's assertion that the instant decision has created interdistrict conflict with the Fourth District Court of Appeal decision in Yale Industrial Products, we again note the factual distinctions, but feel compelled to address what we consider to be an improper interpretation of section 48.193(1)(f)(2) which would appear to make the statute vulnerable to constitutional challenge. If this results in conflict, so be it.
It is unclear from the court's opinion in Yale whether either the plaintiff Gulfstream or (what we assume to be a defendant and perhaps also a third-party plaintiff) Material asserted jurisdiction under one or more specific subsections of the long arm statute. The court sets out the factual allegations of "the complaint" and without further discussion declares, "The relevant section of [the] statute, against which the activities of Yale are to be measured, is section 48.193(1)(f)(2), Florida Statutes (1981)." 481 So.2d at 1305. Notwithstanding the possibility that jurisdiction might properly have been based on another subsection of the statute,[1] the court interpreted section 48.193(1)(f)(2) to allow a suit for products liability where the only "injury" alleged is financial. This interpretation ignores the law in Florida with regard to products liability[2] and the plain language of the subsection at issue, as well as its relationship *91 to the other subsections of the long arm statute.[3] We find the more logical interpretation of section 48.193, and one that is in better harmony with the body of Florida law and the constitutional requirements of due process, to be that the Florida Legislature intended to subject to the jurisdiction of Florida courts those who act within this state in certain enumerated circumstances,[4] those who insure any person, property or risk located within this state,[5] and, in addition, those whose actions or omissions outside this state cause personal injury or property damage within this state, where the personal injury or property damage results from the use or consumption of a product manufactured or handled by the defendant, or where it results from solicitation or servicing activities carried out within the state at the time of the personal injury or property damage.[6]
Appellant also asserts in its motion for rehearing that this court has misapprehended and improperly relied upon Canron Corporation v. Holt, 444 So.2d 529 (Fla. 1st DCA 1984), in remanding to the trial court for a determination of the location at which the allegedly nonconforming goods were in fact delivered. It is appellant who has misapprehended this court's holding, as well as its reason for citing Canron. Until appellant can convince the trial judge that the term "F.O.B." is merely boilerplate, it has a serious jurisdictional problem.[7] This court's opinion is clear. We reject appellant's inappropriate reargument of the issue.
The motion for rehearing is DENIED.
BOOTH, C.J., and WIGGINTON, J., concur.
NOTES
[1] See Jones v. Jack Maxton Chevrolet, Inc., 484 So.2d 43 (Fla. 1st DCA 1986), in which this court held that it is sufficient to plead jurisdiction over non-resident defendants by tracking the relevant language of the long arm statute.
[2] In Canron Corporation v. Holt, 444 So.2d 529 (Fla. 1st DCA 1984), the court appears to have determined that, notwithstanding the fact that Canron's product was shipped F.O.B. its South Carolina plant, the product was delivered in Florida. The court held that this demonstrated sufficient "connexity" between Canron's business activities in Florida and the cause of action sued upon. It should be noted, however, that the finding of personal jurisdiction in Canron was based on section 48.193(1)(a) ("doing business" in Florida), and that the record indicates a continuous course of dealing between Canron and the Florida corporation over many years.
[3] This disposition is not meant to prejudice appellant's right to seek permission from the trial court to amend its complaint to properly allege in personam jurisdiction under any of the other sections of the long arm statute. If the complaint is so amended, and the jurisdictional allegations are properly challenged, appellant will then be required to prove its allegations.
[1] Because the status of the parties is unclear, we cannot tell whether jurisdiction was or could have been pled under 48.193(1)(a) (doing business in Florida) or under 48.193(1)(g) (delivery of nonconforming goods). Lacy v. Force V Corp., 403 So.2d 1050 (Fla. 1st DCA 1981), cited inappropriately by the court in a confusing discussion of a related issue, involved an action for breach of contract for delivery of nonconforming goods and would be authority for either of these grounds. The allegations of the complaint and the allegations of the motion to dismiss filed by Yale suggest that jurisdiction might have been based on one or both of these subsections. Although the court noted that the determination of Material's status as Yale's distributor was not relevant to a showing of jurisdiction under 48.193(1)(f)(2), and makes no specific determination that the equipment was sold by Yale to Material in Florida (only that Yale sold "products directly to a Florida customer, Material"), both of these determinations would be relevant to a showing of jurisdiction under subsections (a) and/or (g).
[2] In GAF Corporation v. Zack Co., 445 So.2d 350 (Fla. 3d DCA 1984), the court held that a roofing contractor had no products liability cause of action in tort against the manufacturer of defective roofing, where no one was ever personally injured and no property was ever damaged as the result of the defective roofing, even though the roofing contractor had suffered financial losses (it had been sued by reason of the defective roofing and judgments had been rendered against it). See also Fla.Jur.2d, Products Liability §§ 1, 7, 15, 19.
[3] Under this interpretation, as applied by appellant in the case at issue, any act or omission of a nonresident outside the state which results in financial loss to anyone within the state would subject the nonresident to the jurisdiction of Florida courts, so long as the financial loss were somehow related to the nonresident's solicitation or servicing activities within the state, or to the use or consumption within the state of products, materials or things processed, serviced, or manufactured by the nonresident anywhere. Presumably, these would include tortious acts and breaches of contract outside the state involving merely financial losses in commercial transactions. If this were the intent of the Florida Legislature in enacting section 48.193(1)(f), why then did the legislature also enact section 48.193(1)(b) (authorizing jurisdiction over anyone who commits a tort within this state) and section 48.193(1)(g) (authorizing jurisdiction over anyone who breaches a contract in this state by failing to perform an act required by the contract to be performed in this state), given that the usual remedy in such cases is an award of damages for the financial loss suffered as a result of the tort or breach of contract?
[4] By conducting business [subsection (a)], committing a tort [subsection (b)], having real property [subsection (c)], maintaining a marriage [subsection (e)], or breaching a contract [subsection (g)].
[5] Whether they act within or outside of this state, [subsection (d)].
[6] [Subsection (f)]. Note that this interpretation takes into account the due process requirement of "minimum contacts" under International Shoe Company v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and its progeny. Three paragraphs of Yale are devoted to a discussion of minimum contacts, although the stated question to be resolved is whether Yale adequately challenged the allegations in the complaint by asserting that acceptance of orders from Material, and thus the sales contacts with Material, took effect at Yale's place of business in Arkansas and not in Florida. In support of its holding that "the Florida trial court has jurisdiction over Yale by virtue of its selling products directly to a Florida customer, Material," the court cited Lacy (in which, as previously noted, jurisdiction was based on subsection (g)) and cases in which jurisdiction was based on subsection (f), but in which personal injury or property damage was alleged. 481 So.2d at 1306.
[7] § 672.319(1)(a), Fla. Stat. (1981).