Samuel **MURANTE** and Patricia
Murante, Plaintiffs,

v.

**PEDRO LAND, INC., a South Carolina
corporation, and American Importers
of South Carolina, Inc., a South Car-
olina corporation, Defendants.**

No. 90–8250–CIV.

United States District Court,
S.D. Florida.

April 11, 1991.

Ronald M. Zakarin, Boca Raton, Fla., for plaintiffs.

Alan Espy and Fred Cunningham, West Palm Beach, Fla., for defendants.

## ORDER

GONZALEZ, District Judge.

THIS CAUSE has come before the Court upon the defendants' Motions To Abate Or Dismiss For Lack of Jurisdiction. The plaintiffs have filed a Response, and the defendants each have rejoined with a Reply. The motions are now ripe for disposition.

### I.  Background

The plaintiffs have brought suit against American Importers of South Carolina, Inc. and Pedro Land, Inc., seeking redress for injuries incurred as a result of a fireworks accident.

American Importers is a South Carolina corporation which processes, inspects, packages, tests, and distributes explosive projectile fireworks. It does not *manufacture* fireworks. Pedro Land, Inc. is a corporation operating under the trade name "South of the Border" which operates a tourist complex adjacent to Interstate 95 (I–95) in Dillon, South Carolina. Among the businesses operated in the tourist complex are various retail fireworks shops.

On or about August 30, 1988, Lawrence Chidnese, a Florida resident, stopped at "South of the Border" while traveling home to Florida from New Jersey. He purchased a "Supersaver Assortment Bag" of fireworks from "South of the Border" which he then brought with him into Florida. Allegedly, American Importers supplied the assortment bag to Pedro Land.

On July 3, 1989, Chidnese discharged a Moonflitting Phoenix Helicopter Firework which was contained in the assortment bag. The firework allegedly was defective and malfunctioned, striking the plaintiff Samuel Murante below his right eye causing permanent blindness. Amended Complaint at ¶ 16.

In August of 1990, Murante and his wife brought suit against American and Pedro Land alleging counts for strict product liability, negligence, breach of implied warranty of merchantability, breach of implied warranty of fitness for a particular purpose, and breach of express warranty. Both defendants now have moved the Court to abate or dismiss the complaint for lack of personal jurisdiction.

### II.  Personal Jurisdiction Standard

The Court first will state the standard by which it will determine whether it has jurisdiction over each defendant. Because the Court will not conduct an evidentiary hearing on the motions, the plaintiff must establish a prima facie case of personal jurisdiction over the nonresident defendants. *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir.1990). A prima facie case is established if the plaintiffs present enough evidence to withstand a motion for directed verdict. *Id.* The Court must accept the facts alleged in the complaint as true, to the extent the allegations are uncontroverted by the defendants' affidavits. *Id.* Where the plaintiffs' complaint and the defendants' affidavits conflict, the district court must construe all reasonable inferences in favor of the plaintiffs. *Id.*

The determination of personal jurisdiction over a nonresident defendant involves a two-step analysis. *Id.* Initially, the Court must determine whether there is a basis for the assertion of personal jurisdiction under the state long-arm statute. *Id.* If the Court finds such a basis, the Court then must proceed to determine whether sufficient minimum contacts exist between the nonresident defendants and the forum state so as to satisfy the requirements of the due process clause. *Id.* Only if both prongs of the analysis are satisfied may this Court exercise personal jurisdiction over a nonresident defendant. *Id.*

### A.  *Florida Long–Arm Statute*

The parties agree that the relevant provision of the Florida long–arm statute is Fla. Stat.  § 48.193(1)(f)(2). Section 48.-193(1)(f)(2) provides, in pertinent part:

Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts

enumerated in this subsection thereby submits himself ... to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:

(f) Causing injury to persons or property within this state arising out of an act or omission by the defendant outside this state, if, at or about the time of the injury ...

2. Products, materials, or things processed, serviced, or manufactured by the defendant anywhere were used or consumed within this state in the ordinary course of commerce, trade, or use.

The first prong of the personal jurisdiction analysis requires the Court simply to determine whether the activity of each defendant falls within the scope of this statutory provision.

### B. *Due Process Analysis*

If the Court determines that the defendants' conduct is within the parameters of the long-arm statute, the Court must entertain the due process question. The determination of whether the assertion of personal jurisdiction over a nonresident defendant comports with due process itself requires a two-step analysis. First, the Court must determine whether the defendant has established "minimum contacts" with Florida. *Madara*, 916 F.2d at 1514. Next, the Court must consider whether the exercise of personal jurisdiction over the defendant would offend "traditional notions of fair play and substantial justice." *Id.*

### 1. "Minimum Contacts"

The "constitutional touchstone" of the due process analysis remains the requirement that "minimum contacts" exist between the nonresident defendants and the forum state. *Cable/Home Communication Corp. v. Network Productions, Inc.*, 902 F.2d 829, 857 (11th Cir.1990) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985)). The Court must find that the nonresident defendants have purposefully directed their activities to forum residents and that the resulting litigation derives from alleged injuries that arise out of or relate to those activities. *Cable/Home Communication Corp. v. Network Productions, Inc.*, 902 F.2d at 857. In essence, each defendant's conduct and connection with Florida must be such that the defendant should reasonably anticipate being haled into court in Florida. *Id.* at 858. Assessing the existence of "minimum contacts" requires the Court to examine the "quality and nature" of the nonresident defendants' activity, with the essential finding that the defendants have "purposefully availed [themselves] of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Id.* (quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958)).

### 2. Fairness Prong

If the Court determines that the defendants have sufficient minimum contacts with Florida, it becomes necessary for the Court then to ascertain whether its exercise of personal jurisdiction over the defendants would transgress traditional notions of fair play and substantial justice. *Id.* At this stage of the analysis the defendant "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King Corp. v. Rudzewicz*, 471 U.S. at 477, 105 S.Ct. at 2185. Among the factors the Court must consider in performing this final inquiry are: (1) the burden on the defendants; (2) the interests of the forum state; (3) the plaintiffs' interest in obtaining relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Asahi Metal Industry Co., Ltd. v. Superior Court of California*, 480 U.S. 102, 113, 107 S.Ct. 1026, 1033, 94 L.Ed.2d 92 (1987).

The Court now will apply the foregoing standard to each defendant in order to assess whether the Court may exercise jurisdiction over each in accord with the long-arm statute and the due process clause.

## III. American Importers of South Carolina, Inc.

### A. *Who Is American Importers of South Carolina, Inc.?*

■ American Importers is a South Carolina corporation with its principal place of business in Greenville, South Carolina. *See* Amended Complaint at ¶ 6. American maintains no offices in Florida, nor does it have any agents, employees, or sales representatives working in the state. American's Motion To Abate or Dismiss at 2. It owns no real estate in Florida, does not advertise in Florida, and is not registered with the Secretary of State to do business in this state. *Id.* Significantly, however, American has one critical connection to this state: It does sell fireworks to dealers in Florida. *Id.* In fact, although American tries to downplay its lone tie to Florida, its sales to Florida dealers constitute about 8.6% of its yearly gross sales revenues. *Id.*

### B. *Long–Arm Statute*

The applicable provision of the Florida long-arm statute clearly extends to American Importers. The amended complaint unequivocally alleges that American caused injury to the plaintiffs within the state of Florida, arising out of American's acts or omissions undertaken in South Carolina. Further, it is alleged that the product at issue here—the firework which injured the plaintiffs—was processed by the defendant and was being used in the ordinary course of use when the accident occurred. Consequently, Fla.Stat. § 48.193(1)(f)(2) is satisfied. *See Pennington Grain & Seed, Inc. v. Murrow Bros. Seed Co.*, 400 So.2d 157, 159 (Fla. 1st DCA 1981) (holding that a complaint's allegation that the defendant "processed" product is sufficient to satisfy 48.193(1)(f)(2)).

### C. *Due Process Analysis*

■ Next, the Court must determine whether its exercise of personal jurisdiction over American comports with the due process clause. The Court is of the belief that it would.

Although American Importers rings off a facially persuasive list of "non-contacts" with Florida, one factor seems dispositive. The fact that sales to Florida fireworks dealers constitute 8.6% of American's gross sales appears to give American enough of a connection with Florida so that American reasonably could anticipate being haled into court here. Consequently, the Court finds that the "minimum contacts" prong of the due process analysis is satisfied.

American refers the Court to *Tomashevsky v. Komori Printing Machinery Co., Ltd.*, 691 F.Supp. 336 (S.D.Fla.1988) (Gonzalez, J.), to support its contention that its deriving 8.6% of its gross sales from sales to Florida fireworks dealers is not enough to satisfy the due process clause. In *Tomashevsky*, this Court refused to find a California company's sporadic, unsolicited sales to two Florida dealers—constituting less than 2% of its gross sales revenues—sufficient to satisfy the minimum contacts requirement inherent in the due process clause. In contrast to *Tomashevsky*, however, American's sales to Floridians constitute almost 9% of its gross sales. That appears to be enough so that American reasonably could anticipate being sued in Florida. Quite simply, *Tomashevsky* is factually distinguishable. Consequently, this Court's decision in *Tomashevsky* does not preclude the Court from finding that American has sufficient minimum contacts with Florida so as to render it amenable to suit here.

As the defendant has not pointed to anything which would render the court's exercise of personal jurisdiction offensive to traditional notions of fair play and substantial justice—and because of the overriding interest of Florida and the plaintiffs in having this cause litigated in this state—it appears that the second prong of the due process analysis also is satisfied and that the Court constitutionally may exercise personal jurisdiction over American Importers. Accordingly, the Court, having concluded that it has jurisdiction over American Importer's of South Carolina, Inc., will deny American's motion to abate or dismiss.

## IV. Pedro Land, Inc.

### A. *Who Is Pedro Land?*

█ The Court turns now to an analysis of Pedro Land's amenability to suit in Florida. Pedro Land is a South Carolina corporation with its principal place of business in Dillon, South Carolina. *See* Pedro Land, Inc.'s Motion To Abate or Dismiss at 1. Pedro owns and operates a tourist/entertainment facility adjacent to I–95 in Dillon, which operates under the trade name "South of the Border." Included within the "South of the Border" facility are fireworks shops, one of which allegedly sold the firework which injured the plaintiffs.

Pedro maintains no offices in Florida, has no agents in Florida, and is not authorized to do business in Florida. *Id.* at 1–2. Further, Pedro alleges that it does not advertise, through billboards or otherwise, anywhere in the State of Florida. *Id.* at 1.

Although Pedro claims not to advertise within Florida, its advertising efforts outside the state are patently directed towards Florida residents and persons heading for Florida who travel upon I–95. "South of the Border" billboards dot the landscape adjacent to I–95 for 200 miles to the North of Dillon and for 200 miles to the South, *see* Deposition of Robert Campbell at 23–24, and the sign on the "South of the Border" complex in Dillon is visible from the interstate. *Id.* at 33. Moreover, the location of the facility is purposefully designed to be convenient to tourists traveling on the interstate. *Id.* at 21. As I–95 is the primary passageway for Floridians traveling to, and returning from, destinations all along the Eastern Seaboard, Pedro's advertising efforts are quite ostensibly aimed towards soliciting business from the travelers. In fact, Pedro's agent concedes in his deposition that through its billboards Pedro is seeking to elicit business from persons traveling between Florida and New York on I–95, *Id.* at 24–25, 27, particularly Florida residents traveling on the highway. *Id.* at 39, 76.

### B. *Long–Arm Statute*

The plaintiffs have alleged that the defendant Pedro "processed" the product which caused the plaintiffs injury. Amended Complaint at ¶ 8. Hence, the plaintiffs have alleged the jurisdictional requisite under Fla.Stat. § 48.193(1)(f)(2). *See Pennington*, 400 So.2d at 159 (Fla. 1st DCA 1981).

### C. *Due Process Analysis*

█ Having found the long-arm statute satisfied, the Court will move on to entertain the due process question. Because of the unique nature of Pedro's business, the Court's determination of whether it constitutionally may exercise personal jurisdiction over Pedro presents an interesting legal issue.

Initially, the Court must determine whether the defendant has sufficient minimum contacts with Florida. Arguably Pedro has no ostensible contacts with Florida. It has no agents or salespersons here, nor does it advertise in this state. Nonetheless, it seems that the nature of Pedro's business, its location, and the affirmative acts it has undertaken outside of Florida in an effort to solicit sales from Floridians, together provide enough contact with Florida so as to permit the Court to exercise jurisdiction over it.

The "minimum contacts" analysis requires the Court to find that Pedro's conduct and connection with Florida is such that Pedro reasonably might anticipate being haled into a Florida court. Such a connection is present. To be sure, it is true that Pedro allegedly does not physically enter into this state, through its agents or by means of advertising. Nonetheless, Pedro's conduct is of such a character that it reasonably might anticipate being sued in Florida. Pedro is located directly adjacent to a major interstate highway which runs from the Northeast corridor of this nation all the way down the Florida peninsula. I–95 weaves through Jacksonville, down Florida's east coast, and finally ends in Miami, thus connecting Dillon, South Carolina with two of Florida's largest metropolitan areas. Pedro admittedly has filled that interstate passageway with billboards for approximately four hundred miles through North and South Carolina in an effort to lure travelers into its fireworks

stores and entertainment facility. Further, its agent deposed for purposes of this motion flatly concedes that Pedro's advertising along I–95 is directed towards attracting Floridians to purchase its wares. In sum, the Court concludes that the defendant has purposefully directed its activities to Florida residents.

Because of its purposeful efforts to sell to Floridians traveling along I–95 it is reasonable for the defendant Pedro to anticipate that it may be sued in the State of Florida. Pedro sells fireworks which obviously carry with them the great possibility of injury. As Pedro is consciously soliciting sales from, and then selling its fireworks to, Floridians traveling upon I–95 it is very reasonable for Pedro to assume that these buyers will take the fireworks home and discharge them in Florida. It therefore is quite foreseeable that a defective firework could cause someone injury within this state, subjecting Pedro to a lawsuit within Florida's courts. The same reasoning applies with respect to the droves of non-Floridians who descend upon Florida each winter. Many of these seasonal visitors also travel South on I–95, subject to Pedro's roadside solicitation, and it is equally as reasonable for Pedro to foresee that these persons likewise could buy fireworks, transport them into Florida, and ultimately discharge them in this state.

In sum, the Court finds that the defendant has purposefully directed its activities towards Florida residents, as well as non-residents who are destined for Florida. As a result, the Court further finds that the defendant Pedro Land, Inc. has the necessary minimum contacts with Florida so as to allow this Court constitutionally to exercise jurisdiction over Pedro.

The defendant attempts to characterize the plaintiffs' argument as a stream of commerce theory, contending that the plaintiffs are arguing that by virtue of Pedro's simply putting the firework into the stream of commerce Pedro is subject to suit wherever the firework may end up. Pedro contends that if the plaintiff is ad-vancing such an argument, the argument must fail because the Supreme Court has rejected the stream of commerce theory. There are, however, a few problems with the defendant's contention.

First, it is far from clear that the Supreme Court has rejected completely the stream of commerce theory as a basis for personal jurisdiction. It is true that in *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), the Supreme Court held that a nonresident automobile retailer and its wholesale distributor were not amenable to suit in Oklahoma merely by virtue of the retailer selling a vehicle to a New York resident who later became involved in an accident in Oklahoma while enroute to Arizona. However, *Woodson* is factually distinguishable from the present controversy and, in fact, includes language which indicates that on different facts some version of a "stream of commerce" theory may be constitutionally sufficient. *Cf. Asahi*, 480 U.S. 102, 116, 107 S.Ct. 1026, 1034, 94 L.Ed.2d 92 (Brennan, J., concurring).

Further, the Supreme Court's recent decision on the subject in *Asahi* leaves the state of the law uncertain. In *Asahi*, a four member plurality led by Justice O'Connor rejected a pure stream of commerce approach; however, four other members of the Court apparently would accept such a basis for jurisdiction and, in fact, a majority of the Court refused to join that portion of Justice O'Connor's opinion which rejected the pure stream of commerce approach.[1]

A second reason for rejecting the defendant's contention exists because it is questionable whether a pure stream of commerce theory is what the plaintiffs are advocating. It seems not. Instead, it appears that the plaintiffs are claiming that the basis of this Court's jurisdiction is not merely that the defendant has put the product into the stream of commerce but, beyond that, that the defendant is attempting, purposefully and intentionally, to put the product into the hands of Florida resi-

---

1. Justices Brennan, White, Marshall, Blackmun, and Stevens refused to join that portion of Jus-tice O'Connor's opinion which rejected the stream of commerce theory.

dents and the residents of other states heading for Florida. This is not simply a matter of Pedro putting the product into the stream of commerce and by pure happenstance having it land in Florida, as was the case in *Woodson.* Nor is it an instance where the defendant introduced the product into the stream of commerce with an indifferent awareness that the product eventually could end up in the forum state, as was the case in *Asahi.* Quite to the contrary. In this case the defendant Pedro appears to be purposefully, affirmatively, and knowingly attempting to sell its fireworks to Florida residents or persons on their way to Florida. Because of its efforts, the Court finds that the defendant Pedro has purposefully directed its activities towards Florida residents, as well as non-residents traveling to Florida, and that because of its efforts and the nature of its product it could reasonably anticipate being haled into a Florida court.

Having found that minimum contacts exist, the Court next must determine whether the exercise of jurisdiction over Pedro would offend traditional notions of fair play and substantial justice. Because of the overriding interest of Florida and the resident plaintiffs in having the plaintiffs' claims litigated in Florida, the Court finds that it would not be unfair to require Pedro to litigate its claim in this Court. Pedro has not expressed any reason to the contrary. Consequently, the Court finds that its exercise of jurisdiction over Pedro would not offend traditional notions of fair play and substantial justice.

In conclusion, the Court finds that it has personal jurisdiction over Pedro and, therefore, the Court will deny Pedro's motion to abate or dismiss.

Accordingly, having reviewed the motions and the record, and being otherwise duly advised, it is hereby:

ORDERED and ADJUDGED as follows:

(1) American Importers of South Carolina Inc.'s Motion To Abate Or Dismiss For Lack Of Jurisdiction is DENIED. American Importers of South Carolina, Inc. shall file and serve an answer to the amended

complaint within twenty (20) days from the date of this order.

(2) Pedro Land, Inc.'s Motion To Abate Or Dismiss For Lack Of Jurisdiction is DENIED. Pedro Land, Inc. shall file and serve an answer to the amended complaint within twenty days from the date of this order.

DONE AND ORDERED.